BERTHA L. MCINTIRE *vs.* GEORGE E. MCINTIRE.

Penobscot.     Opinion July 16, 1931.

*Crosby & Crosby*, for libellee.
*L. B. Waldron*, for libellant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

FARRINGTON, J.   The case is before this court on exceptions
(1) to the refusal of the presiding Justice to dismiss the libel and
(2) on exceptions to the decree granting the divorce.

We will first consider the exception to the refusal to dismiss. It
is claimed by the libellee that the court lacked jurisdiction by
reason of the fact that his residence was not stated in the libel as
provided in Sec. 4, Chap. 65, R. S. (1916), Sec. 4, Chap. 73, R. S.
(1930).

The divorce libel dated July 17, 1930, in the usual form and
signed by the libellant was inserted in a writ of attachment, re-

turnable to Penobscot County Superior Court on the first Tuesday of September, 1930. The officer's return shows due personal service on George E. McIntire. The writ, upon which a real estate attachment was actually made, contained the usual command "to attach the goods or estate of George E. McIntire of Dexter, in our County of Penobscot," but in the body of the libel or petition the residence of the libellee was not named, nor was the residence stated in any place other than as above indicated.

The docket entries show that the libellee, through counsel, entered a general appearance.

The contention of the libellee is, in effect, that a libel for divorce is a complete petition in itself and that it should set out all matters which are required by statute, and that the residence of the libellee not being named in the libel or petition, such omission or failure can not be cured by the fact that such residence is named or stated in the writ in which the libel was inserted. The evident contention is that the writ is no part of the libel and that a statement in the writ as to residence is not a compliance with the statute which provides that the residence, when it can be ascertained, "shall be named in the libel."

The first appearance in our statutes of any provision for the insertion of a libel for divorce in a writ of attachment was in 1862 when the Legislature by Chapter 122, Section 1, of the Public Laws of that year provided that "In addition to the mode of service already provided, the libel for divorce may be inserted in a writ of attachment, and served as other writs, by attachment, summons and copy; which attachment shall be a lien on any real or personal property attached for the execution of any decrees of the Court in such proceeding; and the Court shall have power to render any judgment necessary to carry such attachment into effect."

Up to this time the only method was by filing the libel, signed by the party complaining, with the Clerk of the Courts with such service as was required by the statutes.

Down to and including the Revision of 1871, no statutory requirement is found relating to the naming of the residence of the libellee in the libel, if it can be ascertained, and none relating to obtaining actual notice. This provision was first enacted by the Legislature of 1874, Chapter 184 of the Public Laws of that year,

Section 1, which was as follows: "Upon all libels for divorce when the residence of the libellee can be ascertained, it shall be named in the libel and actual notice shall be obtained, if the libellee is out of the state, in such manner and by such means as may be ordered by the court. When it is not known to the libellant and can not be ascertained by reasonable diligence, the libellant shall allege and make oath to the same in the libel."

The 1874 provision became Section 4 of the 1883 Revision and the 1862 provision became Section 3 of that Revision.

From 1883 down to and including the date of the exceptions the provisions of the 1874 Act and those of the earlier 1862 Act have been in all the revisions of our statutes, as Sections 4 and 3, with some slight and unimportant difference in language and punctuation, but, in effect, unchanged.

The purpose of the 1874 Act is apparent on a reading of its provisions. Under its requirements a greater measure of certainty as to actual notice to the party libellee was sought and made possible.

It might be said that the Legislature by the 1862 provision above referred to intended that the libel and the writ should be merged into a single legal instrument to be known as the libel and that such a construction of that statute is the natural and obvious one, because at that time there was no statutory provision relating to the naming of the residence of the libellee which was not required until the 1874 Act above quoted. But whatever the 1862 Legislature intended and whatever construction it may have placed upon its own Act, the Supreme and Superior Courts of this State since the enactment of the 1874 Law have granted many divorces on libels inserted in writs of attachment where the only naming of the residence was in the writ itself, and by their decrees they have placed a judicial construction upon the meaning of the phrase "it shall be named in the libel."

While the decrees of presiding Justices in the granting of divorces can not *per se* be regarded as judicial decisions directly involving the construction of a statute, yet, a construction uniformly followed and acquiesced in, over a period of more than fifty-six years, can not be regarded as entirely without weight. But, apart from that, and bearing always in mind the clearly fundamental in-

tent of the 1874 Act to insist upon knowledge of the residence of the libellee and actual notice upon him or her, which is fully assured and accomplished by having the residence stated in the writ, we hold in this case that the residence was "named in the libel" and that such naming of the residence constitutes full compliance with the statutory requirements relating thereto. To place any other construction on the statute would be subversive of its real purpose and might well result in infinite difficulty and evil.

We quote with approval the language of the court in the case of *Bridgeman* v. *The City of Derby*, 104 Conn., 1, 8, 132 Atl., 25, 27; "It will be well to keep before us some of the fundamental principles of statutory construction. The intent of the law-makers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute." After citing other cases, the Court further says: "When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the Statute absolutely forbid."

The point covered by this exception was involved in the case of *Brennan* v. *Brennan*, 129 Me., 498. Although a majority of the Court failed to agree in that case, so that no decision resulted, we are in full accord in this opinion, and this exception is accordingly overruled.

Before considering the other exception, the following facts will be noted.

The libellant was married to the libellee in Dexter, Maine, November 29, 1900. From the libellee's answer to the libel in the instant case and from the libellant's reply thereto, both of which form a part of the record in the case, it appears that she brought divorce proceedings against him by libel entered at the March, 1922, Term of the Superior Court for Penobscot County, at which time it was continued to the May Term and was thereafter continued until, at the November Term, 1922, it was dismissed from the docket. It further appears that on October 7, 1922, he obtained a decree of divorce from the present libellant issuing from the Supreme Judicial Court for Somerset County. The docket entries in the original libels are not in evidence, due, doubtless, to the fact

that when, in objecting to the admission of evidence of cruel and abusive treatment by reason of a judgment in the former case, the libellee's attorney said, "I will offer in evidence — ," the Justice presiding remarked, "I do not think at this point it will be necessary for you to offer evidence. I think the Court would have the right to take Judicial notice of records."

The case before us, however, was clearly tried on the basis of undisputed facts that George E. McIntire was granted an absolute divorce from Bertha L. McIntire on October 7, 1922, and that at the November Term, 1922, her libel was dismissed from the docket of the Penobscot County Superior Court. It is also undisputed that the libellee in this case remarried in 1924, and on the basis of these facts we come to the consideration of the second exception.

After hearing in the instant case the Justice presiding granted a divorce and awarded the libellant the sum of one thousand dollars ($1000.00) in lieu of alimony.

The only question raised by this exception is as to the power of the Court to make the decree.

The libellee's contention is that, inasmuch as an absolute divorce was decreed to him in 1922, the Justice presiding had no power to decree a divorce to his former wife on her present libel brought some eight years after his divorce was granted.

In granting the divorce the Justice presiding clearly relied on the case of *Stilphen* v. *Stilphen*, 58 Me., 508, which was followed by *Stratton* v. *Stratton, Admr.*, 77 Me., 373.

In the Stilphen case, the wife petitioned for a divorce and while her libel was pending her husband brought a cross libel, both libels pending in the same court at the same time. In the absence of her counsel, who was acting for her in respect to both libels and in her absence and at a time when, as she claimed, she did not expect the actions to be called for trial, her husband had her called and defaulted on his libel. Following that, at an ex parte hearing he obtained a decree in his favor. The wife at once petitioned for a review which the court had no power to grant because of the remarriage of the husband. Failing to secure the review, the wife was given the right to go on with her libel which was first filed. The only objection on the part of the libellee was that the fact that he had already obtained a divorce was a bar to her libel. The question be-

fore the court was as to whether the fact that a husband had already obtained a divorce deprived the Court of the power to grant a "like divorce" to the wife. The Court in the Stilphen case decided that it did have the power to grant such divorce on her libel, which was dated September 22, 1864, and accordingly made a decree in favor of the wife.

Using the language of the opinion, "The Court is thus called upon to decide whether the fact that the husband has already obtained a divorce, deprives the Court of the power to grant a like divorce to the wife, and thus lay the foundation for an ancillary decree, securing to her such portions of the common property as justice and humanity may dictate."

The reason for the conclusion of the Court in this case, that "a like divorce" could be granted, is clearly indicated by the language in the opinion following immediately after the above quoted portion, "We cannot doubt that this Court is vested with such power. It was at one time conferred in express terms. The Revised Statutes of 1841, c. 89, s. 2, contained an enumeration of eight clauses for which a divorce might be granted. The seventh was, that when one party had been divorced, the Court might grant a like divorce to the other upon such terms and conditions as in the exercise of a sound discretion should be judged reasonable. This entire section was afterwards repealed, — not, however, for the purpose of depriving the Court of the power to grant a divorce in any of the cases therein named, but because a new statute had in the meantime been enacted, conferring upon the Court such enlarged powers, in matters of divorce, that the former enumeration of causes was not only useless, but imperfect and deceptive. The very act which repealed the former enumeration, reaffirmed the power of the Court to grant a divorce in any case and for any cause (except where both parties had been guilty of adultery, or were guilty of collusion), if the same should be deemed reasonable and proper, etc. Act of 1850, c. 171."

Chap. 89, Sec. 2, R. S. 1841, to which the opinion referred, provided that, "a divorce may be decreed from the bonds of matrimony, in the following cases, and for the following reasons:" . . . "Seventh. In all cases, where one party has been, or shall be, divorced from the bonds of matrimony, the Court granting the same,

may, on application of the other party, grant a like divorce, on such terms and conditions as such Court, in the exercise of a sound discretion, may judge reasonable;"

P. L. 1847, Chap. 13, made certain changes but those provisions were repealed by P. L. 1849, Chap. 116, additional to Chap. 89, R. S. 1841, which were as follows: "A divorce from the bonds of matrimony may be decreed by any Justice of the Supreme Judicial Court at any term thereof held in the county in which either of the parties reside, when such Justice, in the exercise of a sound discretion, may deem the same reasonable and proper, conducive to domestic harmony and consistent with the peace and morality of society; and the same orders and decrees may be made, and the same proceedings had as are prescribed in the chapter to which this is additional."

"Act of 1850, c. 171," referred to in the opinion in the Stilphen case provided that in the trial of all libels, "the libellant shall not be restricted to the proof of causes happening within the State, or where either of the parties are residing within the State, or since the passage of the acts to which this is additional, but may allege and prove any facts tending to show that the divorce would be reasonable and proper, conducive to domestic harmony, for the good of the parties, and consistent with the peace and morality of society."

There were no further changes or amendments before the 1857 Revision of the Statutes which provided in Chap. 60, Sec. 2, as follows: "A divorce from the bonds of matrimony may be decreed by any Justice of the Supreme Judicial Court, at any term thereof in the county where either party resides at the time of filing the libel, when in the exercise of a sound discretion, he deems it reasonable and proper, conducive to domestic harmony, and consistent with the peace and morality of society, if the parties were married in this State, or cohabited here after marriage."

This is the history of the divorce laws, as far as they could possibly relate to the point involved, from 1841 to 1864, the date of the wife's libel in the Stilphen case. From and including the Revision of 1857 down to and including even the Revision of 1930, there has been no provision for granting a "like divorce" to the other party where one party "has been, or shall be, divorced

from the bonds of matrimony," nor has there been any other law which could by any stretch of the imagination be regarded as so providing.

It is the generally recognized rule that the enactment of Revisions of Statutes manifestly designed to embrace an entire subject of legislation operates to repeal former acts dealing with the same subject, even though there is no repealing clause to that effect. The application of the rule is not dependent on the inconsistency or repugnancy of the new legislation and the old, for the old legislation is impliedly repealed by the new even where there is no repugnancy between them. It is well phrased in 25 R. C. L., Sec. 175, page 925, where it says, "Where a statute is revised, or a series of acts on the same subject is revised and consolidated into one, all parts and provisions of the former act or acts, that are omitted from the revised act, are repealed, even though the omission may have been the result of inadvertence, and unless the earlier provision is continued in force by a saving clause."

*Bartlett et als* v. *King, Exr.*, 12 Mass., 537, 545, expresses it in this way: "A subsequent statute, revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law as well as in reason and common sense, operate to repeal the former."

We cite a few of the many cases recognizing the principle stated in 25 R. C. L., *supra*, and in *Bartlett et als* v. *King, Exr.*, supra; *Morris et al* v. *City of Indianapolis et al*, 177 Ind., 369, 94 N. E., 705; *Murdock* v. *City of Memphis*, 20 Wall., 590; *Sibley et al* v. *Continental Supply Co.* (Tex.), 290 S. W., 769; *Mayor et als of Frederick* v. *Groshon*, 30 Md., 436, 96 Am. Dec., 591; *State ex rel. City of Milwaukee* v. *Milwaukee Electric Ry. & Light Co.*, 144 Wis., 386, 129 N. W., 623; *C. N. Ray Corporation* v. *Secretary of State*, 241 Mich., 457, 217 N. W., 334; *State* v. *Michaels* (W. Va.), 138 S. E., 199; *Bay Bridge Ferry Corporation* v. *County Commrs.* (Md.), 153 Atl., 441; *People* v. *Borgeson*, 335 Ill., 136, 166 N. E., 451; *Nash* v. *State* (Ind.), 166 N. E., 252; *State* v. *Wilson*, 43 N. H., 415, 82 Am. Dec., 163; Appeal of Snyder (Pa., 1931), 153 Atl., 436, 437; the principle appears to have been recognized in the early Maine case, *Towle* v. *Marrett*, 3 Me., 22, and

also in *Knight et als* v. *Aroostook River R. R. Co.*, 67 Me., 291.

If the legislatures which passed the several revisions from 1857 to date had intended to grant to the courts the right to decree divorces to one already divorced or who might be divorced, where the marriage relation no longer existed, such provision could have been made, but none was made. It must be constantly borne in mind that matters of divorce are purely statutory. In spite of the fact that many divorces are being granted, the tendency of the law has been in the direction of restriction. In 1841 causes were defined, and then prior to and including the 1857 Revision it was practically left to the discretion of the Judge as far as causes were concerned, and this was also true as to the 1871 Revision. The Revision of 1883, however, swung back and restricted divorce to specified causes. In view of the entire situation as thus revealed, we find there was no statutory authority or power by virtue of which a decree of divorce could have been granted in the instant case.

We do not regard the Stilphen case as an authority in the present case. To say that the 1841 provision in relation to granting divorces to both parties was in force when the present libel was brought would be equivalent to saying that any former provision of a statute would still be alive and form a part of our statute law, in spite of the fact that six Revisions have been enacted none of which have referred to it in any way.

"It may be conceded to be settled in this State that the jurisdiction and authority of the Court, in matters pertaining to divorce, are derived from the provisions of the Statute," *Stratton* v. *Stratton*, 77 Me., 373, 377, citing *Henderson* v. *Henderson*, 64 Me., 419; *Stewart* v. *Stewart*, 78 Me., 549, 551.

Jurisdiction over divorce is purely statutory and every power exercised by the court with reference to it must be found in the statutes or it does not exist. 2 Schouler on Divorce, Marriage and Domestic Relations, 6th ed., Vol. 2, Sec. 1468, p. 1724; *Rumping* v. *Rumping* (Mont.), 91 Pac., 1057, 1058; *Baugh* v. *Baugh*, 37 Mich., 59, 26 Am. Rep., 496; 14 Cyc., 581, cases cited; *Cotter* v. *Cotter*, 225 Fed., 471; *Martin* v. *Martin* (Wis.), 167 N. W., 304; *Cizek* v. *Cizek*, 76 Neb., 797, 107 N. W., 1012; *Chapman* v. *Chapman et al*, 269 Mo., 663, 192 S. W., 448; *Gilbert* v. *Hayward et al*, 37 R. I., 303, 92 Atl., 625.

There being no statutory power under which the divorce in the case before us could have been granted, we are forced by that conclusion to hold that the 1922 divorce granted to the libellee was and is a bar to any divorce proceedings, on the part of the present libellant, against him.

Where parties have never been married, or the evidence is not sufficient to prove marriage, the court will not assume jurisdiction to decree a divorce. Where a previous divorce, as in this case, has been decreed to one party, the marriage status as such is as completely destroyed as if it had never existed and there is no more or better reason, apart from statute, to take jurisdiction in that case than in cases where there has never been a marriage or where proof of marriage is sufficient.

An examination of the court decisions of other states reveals some as holding that where one of the married parties goes into another state and procures a divorce, such a divorce, if found valid, is a bar to a divorce in favor of the other party. *Dunham* v. *Dunham* (Ill.), 44 N. E., 841 ; *Jones* v. *Jones*, 108 N. Y., 415, 15 N. E., 707 ; *Flaxell* v. *Flaxell* (Neb.), 165 N. W., 159 ; *Malcolm* v. *Malcolm* (Ky.), 38 S. W., 141.

We have found no cases, apart from statutes, which assumed jurisdiction on facts similar to those in the instant case. The Stilphen case, as we have noted, rests upon the opinion of the court that it did have such statutory authority.

In *Drake* v. *Drake*, 76 N. H., 32, divorce proceedings were brought in New Hampshire against a libellee living in Massachusetts to whom there had been granted a decree *nisi* in the latter state. That decree not being absolute, the court said, "There was, therefore, no binding judgment of divorce in favor of the libellee, *which would deprive this court of jurisdiction or constitute a bar to the maintenance of the libellant's suit.* The libellee's action had not gone to judgment when this suit was begun, or at the time of the hearing. It was merely pending. *The marriage between the parties still subsisted.* Its dissolution was contingent and might never take place. Under such circumstances, it was held in the recent case of *Sworoski* v. *Sworoski*, 75 N. H., 1, that the *pendency* of divorce proceedings in another State by the husband is no bar to a similar action in this State by the wife whose domicile is here."

The principle that, after the dissolution of the marriage relation is brought about by divorce granted to one, the other can not subsequently maintain an action for divorce, is recognized in *Downey* v. *Downey* (Ala.), 13 So., 412, 414, and also in the case of *Feickert* v. *Feickert*, 98 N. J. Eq., 444, 131 Atl., 576, in which the court says, "Of course New Jersey can grant a divorce only to parties who are married, and can not divorce parties who are already validly divorced. To divorce parties who are not married would be a nullity; and the Court will not do a vain thing." Citing *Zudiak* v. *Szuryk*, 93 N. J. Eq., 559, 561, 118 Atl., 331.

All these cases recognize the general principle that, once lawfully granted, a divorce ends the marital relation and that there is nothing on which the party against whom a divorce has been decreed can base a jurisdictional right to another decree in his favor.

In Nelson on Divorce and Separation, Vol. 2, Sec. 1033, page 1003, referring to valid decrees of divorce obtained in another state and recognizing the principle that the marriage relation is dissolved when one party is lawfully divorced, it is stated, "The only avenue of escape is to provide by *appropriate legislation* that such decree shall not be a bar to the wife's suit for dower, or by permitting a subsequent suit for divorce after a decree has been obtained in another State."

Apart from statutory authority, a husband or wife divorced on the libel of the one has no standing in court for the purpose of obtaining a decree in his or her favor against the other. In this case there was no such authority, and the entry as to the second exception must be,

*Exception sustained.*