BARBARA WILSON, PETITIONER *vs*. CLARENCE WILSON.

Androscoggin.　Opinion, April 3, 1944.

*John G. Marshall*, for the petitioner.

*Seth May*, for the respondent.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

HUDSON, J.   The respondent excepts to a ruling by a Justice of the Superior Court adjudging him in contempt for failure to pay alimony as ordered in a decree of divorce obtained by him against the petitioner herein. The exceptions are based on two grounds: first, that the Court below did not rule upon his motion to dismiss the petition seeking to have him adjudged in contempt, and second, that the order for payment of alimony was void.

*Ground One.* It need be stated only that the adjudgment of the respondent in contempt was in effect a denial of the respondent's motion to dismiss the petition. In the recent case of *Lebel* v. *Cyr*, 140 Me., 98, 34 A. (2d), 201, we said on page 202 (analogously to the situation here): "However, the effect of the granting of the plaintiff's motion for default was to deny in fact the defendant's motion."

*Ground Two.* If the alimony order in his divorce decree were void, failure to comply with it would not found contempt. *Call* v. *Pike*, 66 Me., 350, 354.

The respondent contends rightly that the law of divorce in this jurisdiction is wholly statutory, *Jones, Appellee* v. *Jones, Appellant*, 136 Me., 238, 241, 8 A., 2d, 141; *McIntire* v. *McIntire*, 130 Me., 326, 335, 155 A., 731; *Stratton* v. *Stratton*, 77 Me., 373, 377, 52 Am. Rep., 779; *Henderson* v. *Henderson*, 64 Me., 419, 421; and, claiming that our divorce statute (R. S. 1930, Chap. 73) contains no authority to grant alimony to a wife from whom the husband obtains a divorce, insists that lawfully there may be no such order, even though it is inserted in his decree with his consent and in accordance with their agreement. Herein neither the agreement nor its inclu-

sion in the decree by his consent is controverted. Likewise there is no claim of collusion.

We consider *Stratton* v. *Stratton,* supra, controlling on this issue. Our divorce statute then was the same in effect as now, so far as this question is concerned. In that case as in this, included in the husband's decree for divorce against his wife was an order for payment of alimony by him to her in accordance with their noncollusive agreement. While there was a cross-libel on which the wife also obtained a divorce (now divorce decrees may not be granted to both spouses, *McIntire* v. *McIntire,* 130 Me., 326, 155 A., 731), yet the alimony order was not inserted in her decree. The fact that it could have been did not lawfully prevent its inclusion in his decree, *he consenting thereto.*

In the *Stratton* case, supra, the question as stated by the Court was whether "it was beyond the jurisdiction of the court to allow alimony to the wife on the libel of the husband." It said: "This is undoubtedly true in cases where there is no waiver by the husband of his strict legal rights, and the decree is made in opposition to his will." In the case at bar it must be deemed that the presiding Justice found that the respondent waived his "strict legal rights" and the decree was not made "in opposition to his will.' The Court also stated on page 377:

> "But the court, being invested with jurisdiction in reference to alimony, there is nothing whereby parties are prohibited from entering into a proper agreement in reference thereto; or the court from rendering judgment in accordance with the agreement of the parties, which they have seen fit to make, as in other cases. . . .
>
> "And by this, it should not be understood that we mean to hold that the consent of parties can give the court jurisdiction of the subject matter in controversy, where *no* jurisdiction has been conferred upon it by the legisla-

ture. But that when the court has jurisdiction of the general subject matter in controversy,—'power to adjudge concerning the general question involved,' . . . then the consent of the parties may authorize the court to render a valid judgment, in accordance with such agreement."

In the *Stratton* case, supra, the Court on page 378 distinguished *Henderson* v. *Henderson,* supra, 64 Me., 419; *Stilphen* v. *Houdlette,* 60 Me., 447; and *Stilphen* v. *Stilphen,* 58 Me., 508, and said:

"In those cases the court was called upon to decide as to the strict legal rights of the parties and where there had been no waiver, or agreement, as in the case at bar."

With reference to this holding in the Stratton case, supra, our Court in *Luques* v. *Luques,* 127 Me., 356, 360, 143 A., 263, 264, observed:

"Upon the first question raised" (want of jurisdiction) "and upon which counsel lays the greatest stress, no error is shown. It is true that, under the divorce statute of this state, a husband can not be compelled *without his consent* to provide alimony or support for a wife against whom he has obtained a divorce for her fault, . . . *Stratton* v. *Stratton,* supra, 77 Me., 376 . . . ."
(Italics ours.)

In Sec. 615, 17 Am. Jur., page 478, it is stated:

"It is a general rule, independent of statute, that permanent alimony will not be awarded to a wife from whom her husband obtains a divorce for her marital fault or misconduct, *except when particular circumstances may be deemed to justify it."*
(Italics ours.)

It is difficult to conceive of more compelling particular circumstances justifying the employment of the exception to the general rule than when, with the parties before the Court, there is a noncollusive, court-approved agreement as to alimony, perhaps then acceded to by the husband because he believes that it is only fair and just that following the separation she have such support, which he is willing to provide, and especially when she may have no other means due to age, poor health, or some other cause. She may believe she could prevail in a contest, but desists in reliance upon his valid promise. He obtains his divorce. Afterwards he breaks his word. Should the Court shield him in such a reprehensible act and deny her the agreed-upon subsistence, because he obtained his divorce for her fault?

We realize that it our duty to declare law as is and not what it should be. But in this jurisdiction the law is *stare decisis* and the question is whether we shall now, after a lapse of nearly sixty years, change it. This we think we should not do.

In *Cota* v. *Ross*, 66 Me., 161, Chief Justice Appleton said on page 165:

"The decisions of our highest tribunals are the only authority for the greatest part of our law. Nothing can more tend to shake public confidence in its stability than a disregard by the court of its previous adjudications. 'It is of less importance,' observes Ashurst, J., in *Goodtitle* v. *Otway*, 7 T. R., 395, 'how the law is determined, than that it should be determined and certain; and such determination should be adhered to, for then every man may know how the law is.' In Nixon's estate, 9 Irish, L. T. R., 32, Christian, L. J., declared: 'It is better that the law should be certain, than that it should be abstractly correct.' Unless we adhere to previous adjudications, we have nothing but oscillations in our decisions; and litigants can have no

certainty that the law of yesterday will be the law of to-morrow."

To overrule *Stratton* v. *Stratton,* supra, as interpreted in *Luques* v. *Luques,* supra, would be upsetting to practice, create uncertainty and litigation as to orders heretofore made in reliance thereon, and tend to defeat justice.

*Exceptions overruled.*