LORETTA ELIZABETH O'LOUGHLIN, PLAINTIFF-APPEL-
LANT AND CROSS-RESPONDENT, v. THOMAS A.
O'LOUGHLIN, DEFENDANT-RESPONDENT AND CROSS-
APPELLANT.

Argued February 16, 1953—Decided April 27, 1953.

Mr. *Saul J. Zucker* argued the cause for the plaintiff-appellant (*Messrs. Kristeller and Zucker*, attorneys).

Mr. *Harry Cohn* argued the cause for the defendant-respondent.

The opinion of the court was delivered by

OLIPHANT, J.  This is an appeal from a judgment of the Superior Court, Chancery Division, awarding alimony to plaintiff at the rate of $250 a month to commence on February 4, 1952, and denying relief with respect to arrearages alleged to be due under a decree of divorce granted in the State of Nevada.  Because of the seeming conflict of jurisdiction with respect to the enforcement of the Nevada decree, a prior appeal was taken to this court with respect to certain restraints entered preliminarily in this case in an effort by the Superior Court to maintain the *status quo* pending the ultimate disposition of the cause on the merits.

The action was originally in two counts, one to establish the *quantum* of alleged arrearages under the Nevada decree; the second count sought a judgment in this State for the sum so adjudicated.  The prior steps taken in Nevada and in this State to enforce these arrearages are set forth in full in the prior opinion of this court in 6 *N. J.* 170 (1951).

Prior to that appeal the complaint was amended to add a count with respect to the amount of support and mainte-

nance, 6 *N. J.* 176, which might be payable in the future on the ground that the circumstances of the parties had changed; and a count seeking to recover, 6 *N. J.* 176, the arrearages that were due under the 1935 Nevada judgment. In our prior decision the cause was remanded, and we stated the issues remaining for determination were the *quantum* of alimony payable *in futuro* in keeping with what is said to be altered circumstances, the extent of the arrearages under the Nevada judgment and the agreement of the parties embodied therein constituting the subject matter of counts 3 and 4 of the complaint; and we then stated the essential question for decision is whether the court should defer to the Nevada court on the issue of the arrearages under the Nevada judgment.

At the time of that decision there was a default Nevada judgment for arrears in favor of the appellant, and likewise there was a judgment in the Superior Court based upon this Nevada judgment, also entered on default. The Nevada judgment was vacated by the Nevada court and the appellant, on the argument of the prior submission of this case to this court, consented to the vacation of the New Jersey judgment. The matter was remanded for the trial of counts 3 and 4 of the amended complaint.

On remand the trial court tried out these issues raised by the counts of the amended complaint, including the question as to whether or not the agreement which was incorporated in the Nevada decree of 1935 had been altered by a subsequent oral agreement between the parties. The court found as a matter of law and fact that the agreement had been validly altered and that the appellant, by having accepted the benefit of the arrangement between her and the cross-appellant over a period of years, could not now be heard to complain.

The trial judge, proceeding on the theory that the court had jurisdiction to award alimony as such under *R. S.* 2:50–37 (*N. J. S.* 2*A*:34–23), took the usual testimony as to the changed circumstances of the parties, including appellant's testimony that due to increased cost of living and the income

tax that she now had to pay on the support money which she received, she was placed in necessitous circumstances. On this phase of the case he made an award of alimony at the rate of $250 a month starting February 4, 1952, the last trial date before him, and awarded counsel fee of $2,500 to the counsel for the appellant-wife. The count for arrearages was dismissed.

The appellant appeals from the judgment entered on all counts, and the respondent cross-appeals on the question of the allowance of alimony in the amount of $250 a month and the counsel fee awarded to the wife.

The case was certified here on our own motion under *Rule* 1:5–1(*a*).

The appellant contends that the Nevada judgment entered in 1935 is entitled to full faith and credit in this State and that a judgment for the arrears and interest should have been entered thereunder. The argument is that the 1935 judgment is a final judgment as to all arrearages and is entitled to full faith and credit, and that under the law of Nevada the court is without power to retroactively modify accrued arrearages under that judgment.

Under the Federal Constitution and the decided cases our courts are only required to give full faith and credit to a judgment of a foreign state with respect to alimony where the past due installments are irrevocable, absolute and vested under the law of the state in which the judgment was entered. *Barber v. Barber*, 21 *Howard* 582, 16 *L. Ed.* 226 (1852); *Sistare v. Sistare*, 218 *U. S.* 1, 30 *S. Ct.* 682, 54 *L. Ed.* 1905 (1910); *Conwell v. Conwell*, 3 *N. J.* 266 (1949). Where the decree is not final and if past due installments are subject retroactively to modification or recall after their approval, such judgment is not entitled to full faith and credit. *Sistare v. Sistare, supra; Lynde v. Lynde*, 181 *U. S.* 183, 21 *S. Ct.* 555, 45 *L. Ed.* 810 (1901).

The question therefore arises whether the past due installments which are arrears under the 1935 judgment in Nevada and the underlying agreement are subject to modification in any fashion under the law of Nevada.

The agreement between the parties which was incorporated in the Nevada decree of 1935 provided for a cash payment of $5,000 and the disposition of certain real property which went to the wife, and provided specifically that the husband will pay to the wife "during her natural life and as long as she does not remarry the sum of $225.00 on the first of each and every month beginning May 1, 1935." The wife on her part agreed out of this sum to pay for the support of the son until he reached the age of 21 or as long as it was necessary to support the son, and she further agreed to place the boy in a military school or similar institution of higher learning immediately upon his graduation from grade school, and to further provide for his education until he reached the age of 21 or such further time as the law required, and that if she remarried the husband would pay $100 a month for the support of the son under the same conditions.

In October 1935, six months after the decree was entered, by agreement of the parties custody of the son was taken by the husband-respondent, and thereafter he deducted $100 a month from the allowance provided for his wife in the agreement to cover the cost of the son's support and education. The husband contended below, and the trial court agreed with him, that this oral agreement amounted to a modification of the contract to the extent the wife had agreed to take thereafter only $125 a month, and this in fact she had done up to the time this suit was instituted.

The provisions as to support of the child are clearly contemplated under the *Compiled Statutes of Nevada, sections* 9463 and 9465 (1929), and it is clear from the statute and the cases that the decree could be modified as to the question of custody. *Schneider v. Second Judicial District,* 64 *Nev.* 26, 176 *P. 2d* 797 (*Sup. Ct.* 1947); *State, ex rel. Jones v. Second Judicial District Court,* 59 *Nev.* 460, 96 *P. 2d* 1096 (*Sup. Ct.* 1939), 98 *P. 2d* 342 (*Sup. Ct.* 1940); *State, ex rel. Groves v. First Judicial District Court,* 61 *Nev.* 269, 125 *P. 2d* 723 (*Sup. Ct.* 1942).

Neither of these sections of the statute which were in effect at the time this decree was entered make any specific refer-

ence to alimony as such, but relate to support of the children and disposition of the property. Alimony as such was apparently awarded as an incident to divorce when the wife was the successful party. *Blankenship v. Blankenship*, 51 *Nev.* 356, 276 *P.* 9, 63 *A. L. R.* 1127 (*Sup. Ct.* 1929); *Cunningham v. Cunningham*, 60 *Nev.* 191, 102 *P. 2d* 94, 105 *P. 2d* 398, 400 (*Sup. Ct.* 1940); *Lewis v. Lewis*, 53 *Nev.* 398, 2 *P. 2d* 131 (*Sup. Ct.* 1931). The word "alimony" first appears in these sections by an amendment of 1939, 2 *Nev. Comp. Stat.* (1931–1941), *p.* 1276.

There apparently is only one Nevada case that discusses an award made to the wife where the judgment or decree was in favor of the husband, and that is the case of *Gerbig v. Gerbig*, 60 *Nev.* 292, 108 *P. 2d* 317, 319 (*Sup. Ct.* 1940), where the court said:

> "Here the alimony awarded and accepted by the wife was not hers as a matter of right, as the divorce was granted the husband. She not only accepted the sum of $50 awarded for the month of June, but is desirous of receiving the balance of the alimony awarded."

The court held that by having accepted the payments she was not entitled to appeal or move for a new trial.

The original agreement between these parties was incorporated into the Nevada decree and hence the question of its modification is controlled by the law of the State of Nevada, and this being so under sections 9463 and 9465, *supra*, the agreement was subject at all times to modification with respect to the custody of the child. This change of custody is the valuable consideration which would support the oral agreement entered into between the parties six months after the original decree, and therefore is effective insofar as the support and custody of the child is concerned.

The original agreement may be ambiguous in that it can be read to mean the wife is to get $225 a month after the child became of age and his education was finished, but on the other hand, reading the agreement as a whole the wife was to provide for the education of the child, including private

school and college training, from the $225 a month, and if she remarried she was to receive but $100 a month until the child reached age. These all seem to indicate it was the intention of the parties that the amount of money the wife was to receive monthly by way of settlement was $125 a month, and in view of the attitude of the Nevada courts as expressed in *Gerbig v. Gerbig, supra,* it seems reasonably clear that having accepted the sum of $125 a month over the years, she would not be heard with regard to the modification of the contract to the extent the husband would be required to pay her, under the Nevada decree, $225 a month from 1942 to 1952.

Therefore, as a matter of comity the agreement to modify will be recognized as a valid one. In the view which we take of the property settlement agreement and the capacity of the parties to modify it, it is unnecessary to examine the intricacies of the law of Nevada relative to the modification of awards of alimony as such.

The count as to arrearages therefore must be dismissed.

The second question to be met is the one raised on the cross-appeal as to the jurisdiction of the Superior Court, Chancery Division, to make an award of alimony, so-called, in excess of that monthly payment of $225 fixed under the Nevada decree as diminished to $125 by agreement. The challenge is that the court lacks jurisdiction to make such an award under *R. S.* 2:50–37 to a wife divorced in any state for her own marital offense. The word "alimony" as used in our statute has a technical signification, and the power of the court to award alimony is purely statutory. *Calame v. Calame,* 25 *N. J. Eq.* 548 (*E. & A.* 1874) ; *Lynde v. Lynde,* 64 *N. J. Eq.* 736, 753 (*E. & A.* 1902). It is a purely personal right in the nature of an annuity, and its purpose is to require the husband to pay to the wife periodically such sum as, in view of his circumstances and the necessities of the wife, will be a reasonable fulfillment of his continuing duty to support her. *Lynde v. Lynde, supra.*

Alimony is the means of enforcing the continuing duty of support which the husband owes to his wife, and of which

he is not permitted to absolve himself by his own misconduct, although such misconduct has resulted in a dissolution of the marriage. *Lynde v. Lynde, supra; G. v. G.,* 67 *N. J. Eq.* 30 (*Ch.* 1904); *McGuinness v. McGuinness,* 72 *N. J. Eq.* 381 (*E. & A.* 1908); *Dietrick v. Dietrick,* 88 *N. J. Eq.* 560 (*E. & A.* 1918); *Levy v. Levy,* 17 *N. J. Misc.* 324 (*Ch.* 1939); *Parmly v. Parmly,* 125 *N. J. Eq.* 545 (*E. & A.* 1939); *Isserman v. Isserman,* 11 *N. J.* 106 (1952).

██ This is in accord with the general rule that, independent of an express statutory provision, permanent alimony will not be awarded to a wife from whom her husband obtains a divorce for her marital fault or misconduct. 17 *Am. Jur., p.* 478, *sec.* 615; 2 *Bishop on Divorce* (*5th ed.*), *section* 379; 2 *Schouler on Divorce* (*6th ed.*), *section* 1805; 2 *Nelson on Divorce, section* 14.17.

The appellant argues that where an agreement of this type is incorporated in a decree of divorce, the courts of this State have treated the monthly payments as alimony payments, citing *Corbin v. Matthews,* 129 *N. J. Eq.* 549 (*E. & A.* 1941); *Goodrich v. Harrison,* 9 *N. J. Super.* 384 (*Ch. Div.* 1950). But in each of those cases it was the husband who was adjudged the wrongdoer. Alimony as such is only awarded in Nevada to the wife when she is the innocent party in a divorce. *Blankenship v. Blankenship, supra.* These cases are clearly distinguishable from the situation here presented, where it was the husband who obtained the decree and not the wife, and she was the wrongdoer.

Our statute on divorce contains no authority to grant alimony to a wife from whom the husband obtains a divorce, and our courts, no matter how extreme the circumstances might be that would justify an intervention from an equitable standpoint, are without power to so construe the statute to permit an award of alimony to a wife in the courts of this State where she has been adjudged guilty of a marital offense. *Cf. Wilson v. Wilson,* 140 *Me.* 250, 26 *A. 2d* 774 (*Sup. Ct.* 1944).

The statute expresses clearly and definitely the public policy of this State with respect to the award of alimony.

When originally enacted the statute was patterned on the practice and principles of the ecclesiastical courts in England which had jurisdiction in cases of divorce *a mensa et thoro*. At the common law divorce from the bonds of matrimony was granted only by the ecclesiastical courts for such causes as rendered the marriage void *ab initio*. Alimony was not allowed as an incident to such a divorce, for there being no marriage the duty of maintenance had not been undertaken. In divorce *a mensa et thoro*, which merely amounted to a legal separation, the ecclesiastical courts ordered a periodic allowance to be paid by the husband to his wife for her support, and the statute is analogous to this practice in permitting the allowance of permanent alimony in the case of absolute divorce as a means of enforcing the continuing duty of support which the husband owes to his wife. *Lynde v. Lynde, supra, p. 751.*

The policy of our law in divorce, like the policy of the ecclesiastical courts, is dominated by the purpose that the marriage should be preserved rather than destroyed. This policy would be greatly weakened or perhaps entirely vitiated if this court undertook to read into our statute an interpretation which would permit an award of alimony to a wife who had been adjudged guilty of a marital offense.

Regardless of our public policy, however, we are constrained to construe the word "alimony" as used in *R. S.* 2:50–37 in its narrow and technical signification as an expression of the continuing duty of the husband to support the wife when he has been guilty of a marital offense. Such has been the construction placed on this word over the years and we cannot construe it differently in the case of a wife who has been adjudged guilty of a marital offense after a full adversary proceeding in a court of competent jurisdiction which had acquired jurisdiction of both the persons and the subject matter, albeit she was awarded by that foreign court installment payments inaccurately labeled "alimony." The result would be no different, indeed, if she had been awarded alimony in the strict sense, for such foreign action would have no bearing on New Jersey's public policy as expressed

in its statute. Therefore the Superior Court is without jurisdiction under *R. S.* 2:50–37 to award alimony as such to the plaintiff in the sum of $250 a month starting at the last trial date.

As to the appeals with respect to the allowance of the $2,500 counsel fee, we consider $1,500 to be a reasonable counsel fee under the circumstances, since an allowance of $250 *pendente lite* was made in March 1950; an allowance of $750 in April 1951 was additionally made, and a further allowance on the previous appeal was made in this court in February 1951 of $500. *Isserman v. Isserman, supra.*

The judgment below is modified in accordance with the views herein expressed. As to the award of alimony *in futuro* to the appellant-wife the judgment is reversed, and is affirmed as to the dismissal of the counter-claimant respecting the so-called unpaid alimony arrearages. No costs will be allowed.

HEHER, J. (dissenting in part). I would enforce as written the agreement for support and maintenance embodied in the Nevada decree, less an allowance to respondent for his support and maintenance of the defendant son, and remand the cause for determination accordingly. There was no enforceable agreement to modify the obligation of the decree in this regard; and the elements of estoppel are absent.

*For affirmance*—Chief Justice VANDERBILT—1.

*For affirmance in part*—Justice HEHER—1.

*For modification*—Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—5.