CARL CHRISTIANSEN, ALEX KARNICK, JOSEPH MCDONOUGH, et al., and DAIRY DRIVERS PROTECTIVE ASSOCIATION, complainants-appellants,

*v.*

LOCAL 680 OF THE MILK DRIVERS AND DAIRY EMPLOYES OF NEW JERSEY, an affiliate of the American Federation of Labor, et al., and TUSCAN DAIRY FARMS, defendants-respondents.

Submitted October 27, 1939—Decided March 30, 1940.

*Mr. John F. Dumont (Mr. Emanuel P. Scheck,* of counsel), for the appellants.

*Mr. Thomas L. Parsonnet,* for the respondents Local 680 of the Milk Drivers and Dairy Employes of New Jersey, Lawrence McGinley and Horace Jones.

*Mr. Louis L. Feinseth (Mr. Julius Stein,* of counsel), for the respondent Tuscan Dairy Farms.

The opinion of the court was delivered by

HEHER, J.

The individual complainants are employes of the respondent Tuscan Dairy Farms. All but four or five are members of their co-complainant, Dairy Drivers Protective Association, a "company union" organized in the fall of 1938. On November 18th, 1938, this Association entered into a contract with the Dairy Farms whereby the employer "recognized the Union as the sole bargaining agency for all route drivers and salesmen in respect to rates of pay, wages, hours of employment, or other conditions of employment." The term of the contract was "one year from the date" thereof, and "a continued period of one year, * * *," subject to certain conditions.

Sometime in the spring of 1939, the defendant affiliate of the American Federation of Labor undertook to "organize" the Dairy Farms' employes. At a meeting held on July 20th, 1939, most of the complainants, and many of their co-employes, joined the defendant Local, and thereupon declared a strike of the employes of the Dairy Farms as a means of securing its acquiescence in certain demands respecting rates of pay and working conditions, and followed the declaration by action on the following day. Thereupon, the employer and the defendant Local entered into an agreement in writing whereby the employer undertook "to employ or keep in its employ only members of the Union in good standing," and both parties bound themselves "to the Collective Bargaining Negotiations now taking place * * * on behalf

of the Mayor of the City of New York, between Local Unions of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Affiliated with the American Federation of Labor and Metropolitan Milk Bargaining Agency, for it for the purpose of said negotiations," and to "any Agreement" and "all of the terms and conditions of any Contract resulting therefrom," and agreed that, meanwhile, "all terms and conditions of employment now in effect shall continue, but no employe shall be discharged or laid-off, nor shall any terms or conditions of employment of any employe be changed or altered." It seems that all the individual complainants and all other employes of the Dairy Farms eventually joined the defendant Local.

Shortly thereafter, dissatisfaction among the Dairy Farms' employes culminated in the revival of the complainant Association. The defendant Local charges that all this was inspired by the employer; the employer denies the allegation. At all events, the result was the filing of the bill herein averring that the complainant employes of the Dairy Farms "were satisfied with the terms and conditions under which they worked and with the wages they were receiving and with the complainant Dairy Drivers Protective Association as their collective bargaining agent," and "with the contract between" that Association and the Dairy Farms, and "did not wish to become members of" the defendant Local, but were induced to take membership therein through fraud, coercion, and the fear of loss of their employment if they refused to do so, and that the "breach" of the complainant Association's "agreement with the defendant" employer "is the result of a conspiracy between the said" employer "and the defendant Local," and that the employer "has recognized and is continuing to recognize the defendant Local * * * as the sole and exclusive bargaining agent for all of its employes," and the employer "has thereby breached its agreement with the complainant" Association. It was also alleged, on information and belief, that the defendant employer "is willing to perform the terms of its agreement with the complainant" Association, "but is fearful that if it does not recognize the defendant Local * * * as the exclusive collective bargain-

ing agent for its employes a strike will be called against it by" the defendant Local, "and its business will be irreparably damaged;" and that "complainants do not wish to become or remain members of the defendant Local * * *, and do not wish" that body "to act as their collective bargaining agent," but "desire the complainant" Association "to act as their collective bargaining agent and to have the terms of the agreement between the complainant" Association and the defendant employer "specifically performed." There were prayers (1) for specific performance of the contract between the complainant Association and the employer, and (2) for a restraint against interference with the performance of that contract and the employment of the individual complainants by the defendant employer.

Relief *pendente lite* was sought; and this appeal is from the order denying that application. We deem it to have been erroneous in the following particulars set down by the learned vice-chancellor in his conclusions:

"Complainants ask that the Local be required to stipulate that it will not discipline complainants for continuing the litigation to final decree. This will be denied. It seems to me that the Local is entirely justified in requiring complainants to decide promptly whether or not they wish to be loyal members of the Local; whether they want to take part with the other members of the Local or against them. Ten days is enough time for complainants to make up their minds.

"Complainants inform me that they have appealed from the order discharging the order to show cause and they move that the Local be restrained pending the appeal from interfering with complainants' employment by reason of their failure to remain members of the Local in good standing. I am unwilling to advise the restraint. It would have the same effect as if the order to show cause had been made absolute, since the cause, if vigorously pressed, should come on for final hearing and decision before the appellate court is able to dispose of the appeal. As I said before, complainants should get off the fence and stand firmly either on the Local side or on the opposite side of the fence; and they should do so promptly. However—and with some reluctance—I will

advise such a restraint until the opening of the October term of the Court of Errors and Appeals, so that the application may be renewed before that court."

On motion, this court granted the restraint thus prayed pending the determination of this appeal.

The learned vice-chancellor heard the application for relief *pendente lite* on *ex parte* affidavits. He concluded that, while the individual complainants averred "they were defrauded and coerced into joining the Local and going on strike," and "were 'kidnapped' and held against their will at" an all-night "meeting * * * and were afraid to do otherwise than what they did," the "charge of coercion" had not been "sustained by the affidavits," albeit they had "probably" been "subjected to high pressure salesmanship." He also ruled that fraud had not been proved, although he "supposed" the "union organizers painted in rosy colors the advantages to accrue from membership in the Local, and held out high hopes that they would be able to bargain successfully for very high wages and short hours." And, again, he expressed the belief that complainants had "been pulled hither and yon by men stronger and more experienced than themselves."

In these somewhat unusual circumstances, we deem it to have been the duty of the Chancellor to award such relief as was requisite for the preservation of the subject-matter of the controversy pending the determination of the right on final hearing, and so it was error to deny the individual complainants' prayer for an order restraining the defendant Local from interfering *pendente lite* with their "employment by reason of their failure to remain members of the Local in good standing." And it is likewise the function of this court, upon appeal, to "maintain unchanged, as far as practicable, the status or condition of the subject-matter of the controversy during the pendency of the suit." *Doughty* v. *Somerville, &c., Railway Co.,* 7 *N. J. Eq.* 629; *Pennsylvania Railroad Co.* v. *National Docks, &c., Railway Co.,* 54 *N. J. Eq.* 647. See, also, *Terhune* v. *Midland Railroad Co.,* 36 *N. J. Eq.* 318. In each instance, this power is exercised whenever necessary to subserve the ends of justice. And it goes without saying that justice is not served if the subject-matter of

the litigation is destroyed or substantially impaired during the pendency of the suit, and thus the court loses the faculty of fully vindicating such right and of remedying such wrong as may be revealed on final hearing. Doubt of the validity of the complainants' asserted cause of action is therefore not an adequate reason for refusing to maintain the subject of litigation *in statu quo* pending a definitive settlement of the right on final hearing. Unless such be the rule, the final hearing, and the appeal in the event of an adverse decree, would be vain forms.

Here, the defendant Local claims a valid and enforceable closed shop contract with the employer. The complainant Association and its members assert the right to proceed under the earlier contract. If the defendant Local is permitted to enforce its contract with the employer, to the extent of terminating the services of the individual complainants, the status will have been substantially impaired, if not destroyed, in the event that the complainants shall prevail on final hearing, and thus the injury would be irremediable. On the other hand, the maintenance of the *status quo* until final hearing will result in no material infringement of defendants' rights, or, if so, it will be comparatively slight.

The order under review is accordingly modified.

*For affirmance*—None.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WOLFS-KEIL, RAFFERTY, JJ.  11.