ROSE K. CROWE, A/K/A ROSE K. DE GIOIA, PLAINTIFF-APPELLANT, v. SERGIO DE GIOIA, DEFENDANT-RESPONDENT.

Argued January 12, 1981—Decided July 8, 1982.

128

---

---

*Anthony B. Vignuolo* argued the cause for appellant (*Borrus, Goldin & Foley,* attorneys).

*Carl J. Palmisano* argued the cause for respondent (*Palmisano & Goodman,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The basic issue on this appeal is whether temporary relief can be awarded in a suit to enforce an agreement between unmarried cohabitants. The Chancery Division awarded interim support and other relief to plaintiff, Rose K. Crowe. With one judge dissenting, the Appellate Division vacated the support order and remanded the case for trial in the Law Division. *Crowe v. DeGioia*, 179 *N.J.Super.* 36 (1981). We granted leave to appeal from that interlocutory order and reinstated temporary relief during the pendency of this appeal. 87 *N.J.* 412 (1981). We now reverse the Appellate Division, thereby continuing the temporary relief pending the outcome of the underlying action, which we remand to the Chancery Division.

I

In a verified complaint filed in the Chancery Division, plaintiff, Rose K. Crowe (who states she is also known as Rose K. De Gioia), claimed that defendant, Sergio De Gioia, breached his non-marital agreement to support her for life. Her complaint alleged the following facts pertaining to their twenty-year relationship. She met De Gioia in February 1960 when she was 38 and separated from her husband, whom she has since divorced. She was the mother of seven children ranging in age from five to seventeen years. He was 26 and single. Starting in 1960, she and her children lived with and were supported by him. From 1967 to 1980, when De Gioia left, they lived in his house in Perth Amboy. Most significantly, he declared that "he would take care of her and support her for the rest of her life, and that he would share with her his various assets."

In return for his support, she acted like his wife: cooking, cleaning, caring for him when he was ill, helping in his various business ventures, and accompanying him socially. Their relationship was akin to a marriage. Even at the end of their relationship, when De Gioia told her he was leaving to marry a woman 22 years his junior, he promised to give her a "good

settlement" so that she would not have to be concerned with her own support. That settlement, however, did not materialize. Crowe asked the court to enforce her alleged agreement with De Gioia for support, to compensate her for her services, and to award her a share of his assets, costs and counsel fees.

In support of her request for interim relief, Crowe certified the following further facts. She was unskilled, unemployable, and completely dependent on De Gioia for support. She owned no assets except her clothes, personal effects, an inoperable automobile, and jewelry De Gioia had given her. De Gioia, by contrast, had become a wealthy man over the years, acquiring substantial property and business interests, including the Perth Amboy home.

Crowe asked for $385 per week in support and payment of medical, dental and related costs. Furthermore, she requested the right to remain in the Perth Amboy home, protection from removal by De Gioia of any property from the house, and payment of all expenses pertaining to the maintenance of the house, such as the mortgage, insurance and utilities. She also wanted the use of an operable automobile at De Gioia's expense. Finally, she sought an order restraining De Gioia from transferring or otherwise disposing of any of his assets.

In his answer, De Gioia denied most of the allegations of the complaint, but admitted that he had met Crowe in 1960 and had allowed her and her children to live in the Perth Amboy house since 1967. Nonetheless, he denied ever having lived with Crowe or having supported her and her children. He described their relationship as one of friendship and stated that any services she provided to him were meretricious. Furthermore, he denied her allegation that he had promised to support her for the rest of her life or to share his assets with her.

The Chancery Division denied a motion by De Gioia for transfer of the action to the Law Division and granted Crowe's motion for temporary relief. Fearing the infliction of a grave injustice on Crowe if temporary relief were denied, the Chan-

cery Division awarded her "minimal support, enough to keep her alive . . . ." While recognizing that De Gioia denied the underlying support agreement, that court found "some evidence" to infer "there was some type of arrangement between the parties." Accordingly, the Chancery judge awarded Crowe $125 per week in support, permitted her to remain in the house, restrained De Gioia from transferring any of his assets, but denied Crowe's request for an automobile.

The Appellate Division granted De Gioia's motion for leave to appeal. On appeal, the majority concluded that matrimonial precedents were of no value to Crowe in seeking *pendente lite* relief because she was not married to De Gioia. Moreover, the majority found that the trial court had no authority to order any interim relief under *Kozlowski v. Kozlowski*, 80 *N.J.* 378 (1979), where we recognized that a woman had a cause of action in contract against a man with whom she had cohabited for 15 years in exchange for his agreement to support her for the rest of her life ("palimony"). Because the only relief granted in *Kozlowski* was money damages, the majority of the Appellate Division here concluded that preliminary relief was not available. 179 *N.J.Super.* at 40. Thus, the Appellate Division vacated the order granting support and restraining De Gioia from transferring his assets. *Id.* at 48. Additionally, the majority held that the action is "of a traditionally legal character . . . and the relief can and should be obtained in the Law Division." *Id.* at 41.

The dissenting judge agreed that matrimonial laws offered no foundation for *pendente lite* relief. Instead, he found a basis for temporary relief in "settled equitable principles relating to preliminary relief in emergent situations requiring the preservation of the *status quo* and the prevention of irreparable harm, after balancing conveniences and the interests of the parties, until the final determination of the litigation involved." *Id.* at 45. The dissent concluded that jurisdiction in the Chancery Division was proper because the claim was basically for "specific performance of a unique type of agreement to support and the

enforcement of newly judicially created rights impliedly recognized in *Kozlowski* as basically equitable in nature." *Id.* at 47.

## II

■  We begin by affirming that plaintiff is not entitled to alimony. *Kozlowski v. Kozlowski, supra,* 80 *N.J.* at 383. The power of a court to award alimony is purely statutory, and alimony may be awarded only in a matrimonial action for divorce or nullity. *O'Loughlin v. O'Loughlin,* 12 *N.J.* 222, 229, *cert. den.,* 346 *U.S.* 824 (1953). Under the relevant statute, alimony may be ordered on an interim basis only in a "matrimonial action," *N.J.S.A.* 2A:34–23 (Supp.1981–1982), which does not embrace an action on a contract between unmarried cohabitants. *See R.* 4:75. The Legislature has proscribed common law marriages. *N.J.S.A.* 37:1–10. We continue to decline to view nonmarital relationships as if they were lawful marriages. *Kozlowski v. Kozlowski, supra,* 80 *N.J.* at 387. Consequently, we conclude that plaintiff is not entitled to alimony, either permanent or temporary. *Kozlowski v. Kozlowski, supra,* 80 *N.J.* at 383.

The unavailability of statutory alimony *pendente lite,* however, does not foreclose all temporary relief. To the contrary, New Jersey has long recognized, in a wide variety of contexts, the power of the judiciary to "prevent some threatening, irreparable mischief, which should be averted until opportunity is afforded for a full and deliberate investigation of the case." *Thompson, Attorney General v. Paterson,* 9 *N.J.Eq.* 624, 625 (E. & A. 1854). We recognize that the determination to authorize preliminary relief summons the most sensitive exercise of judicial discretion. In exercising that discretion, courts have been guided traditionally by certain fundamental principles.

■  One principle is that a preliminary injunction should not issue except when necessary to prevent irreparable harm. *Citizens Coach Co. v. Camden Horse R. R. Co.,* 29 *N.J.Eq.* 299, 303 (E. & A. 1878). Harm is generally considered irreparable in

equity if it cannot be redressed adequately by monetary damages. In certain circumstances, severe personal inconvenience can constitute irreparable injury justifying issuance of injunctive relief. *Hodge v. Giese,* 43 *N.J.Eq.* 342, 350 (Ch.1887) (one tenant temporarily granted right to enter other tenant's premises to service heater). Pecuniary damages may be inadequate because of the nature of the injury or of the right affected. *Outdoor Sports Corp. v. A. F. of L. Local 23132, AFL,* 6 *N.J.* 217, 229–30 (1951); *Scherman v. Stern,* 93 *N.J.Eq.* 626, 631 (E. & A. 1922) (seller of business temporarily ordered to abide by agreement not to compete). In this case, Crowe was threatened with the loss of her home of 14 years and her only means of support. The interest of an unmarried cohabitant in enforcement of a support agreement and the trauma of eviction from one's home may well justify the intervention of equity. Neither an unwarranted eviction nor reduction to poverty can be compensated adequately by monetary damages awarded after a distant plenary hearing.

■ A second principle is that temporary relief should be withheld when the legal right underlying plaintiff's claim is unsettled. *Citizens Coach Co. v. Camden Horse R. R. Co., supra,* 29 *N.J.Eq.* at 304–05. Here, however, the underlying legal claim, the enforceability of a support agreement between unmarried cohabitants, was settled as a matter of law in *Kozlowski v. Kozlowski, supra.*

■ A third rule is that a preliminary injunction should not issue where all material facts are controverted. *Citizens Coach Co. v. Camden Horse R. R. Co., supra,* 29 *N.J.Eq.* at 305–06. Thus, to prevail on an application for temporary relief, a plaintiff must make a preliminary showing of a reasonable probability of ultimate success on the merits. *Ideal Laundry Co. v. Gugliemone,* 107 *N.J.Eq.* 108, 115–16 (E. & A. 1930). That requirement is tempered by the principle that mere doubt as to the validity of the claim is not an adequate basis for refusing to maintain the *status quo. See Naylor v. Harkins,* 11 *N.J.* 435

(1953) (international union temporarily restrained from report-
ing members of expelled local to employers under union shop
contracts); *Haines v. Burlington County Bridge Comm'n*, 1
*N.J.Super.* 163, 175 (App.Div.1949) (temporarily restraining
county's efforts to acquire bridges). Indeed, the point of tempo-
rary relief is to maintain the parties in substantially the same
condition "when the final decree is entered as they were when
the litigation began." *Peters v. Public Service Corp. of N.J.*, 132
*N.J.Eq.* 500 (Ch.1942), aff'd o.b., 133 *N.J.Eq.* 283 (E. & A. 1943)
(bus company enjoined from proceeding with motion to dismiss
suit when statute of limitations barred new action).

On this application, Crowe contends that DeGioia had sup-
ported her for some 20 years, and it is uncontroverted that
Crowe and her children had been living rent-free in a house
owned by De Gioia for some 14 years. Furthermore, Crowe
certified to De Gioia's agreement to support her for life. Al-
though De Gioia's answering affidavits cast doubt on that con-
tention, the trial court found sufficient evidence to justify
temporary relief. That court determined Crowe's interest in
maintaining a minimal standard of living to be sufficient to
justify the preservation of the *status quo* pending the determi-
nation of her right at a final hearing. *Christiansen v. Local 680
of the Milk Drivers and Dairy Employees of N. J., et al.*, 127
*N.J.Eq.* 215 (E. & A. 1940) (company union granted temporary
injunction barring enforcement of rival's closed shop contract
with employer).

■ The final test in considering the granting of a prelimi-
nary injunction is the relative hardship to the parties in grant-
ing or denying relief. *Isolantite Inc. v. United Elect. Radio &
Mach. Workers*, 130 *N.J.Eq.* 506, 515 (Ch.1941), mod. on other
grounds, 132 *N.J.Eq.* 613 (E. & A. 1942). DeGioia, apparently
now a person of substantial means, would suffer relatively
inconsequential expense if relief is granted. By contrast, with-
holding support from Crowe would be devastating. On balance,
the equities favor the grant of temporary relief to maintain the
*status quo* pending the outcome of a final hearing.

■ Thus, applying traditional equitable principles, we conclude that the record supports the trial court's authorization of preliminary relief. Our dissenting colleague, Justice Schreiber, who would deny preliminary relief, differs not with our determination of the applicable principles, but in the application of those principles to the facts of this case. Although we approve the grant of preliminary relief, we take no position on the ultimate resolution of the factual dispute, which must await a plenary hearing.

■ Furthermore, the inability to fit plaintiff's claim for temporary relief into the conventional category of a matrimonial action is not a bar to relief. To achieve substantial justice in other cases, we have adjusted the rights and duties of parties in light of the realities of their relationship. *See, e.g., McGlynn v. Newark Parking Authority*, 86 *N.J.* 551, 559 (1981); *State v. Shack*, 58 *N.J.* 297, 307 (1971). Increasing numbers of unmarried couples live together. The number of households comprised of unmarried partners rose from approximately 12,000 in 1960 to more than 1.5 million in 1980. U.S. Bureau of Census, Commerce Dep't, 1960 *Census of Population*, "Persons by Family Characteristics," Table 15 (1960) and Current Population Report, Series P–20, No. 365, "Marital Status in Living Arrangements," Table 7 (1980). Although plaintiff need not be rewarded for cohabiting with defendant, she should not be penalized simply because she lived with him in consideration of a promise for support. Our endeavor is to shape a remedy that will protect the legally cognizable interests of the parties and serve the needs of justice. *See generally Restatement (Second) of Contracts*, § 359 at 169 (1981).

Nonetheless, the relief granted should be no broader than necessary to preserve the *status quo* pending a plenary hearing on the merits. On the showing made before the trial court, a reasonable basis existed to permit Crowe to remain in the Perth Amboy home. *See Ferraiuolo v. Manno*, 1 *N.J.* 105 (1948) (landlord temporarily restrained from interfering with tenant's

business on leased premises); *Marjer v. Layfmen*, 140 *N.J.Eq.* 68 (Ch.1947) (landlord enjoined from prosecuting dispossess action against tenant who failed to properly exercise option to renew lease). Furthermore, Crowe is entitled to continuation of the support payments ordered by the trial court of $125 per week. Although substantially less than her demand of $385 a week, that sum should provide her with her minimal needs and prevent the necessity of her seeking public welfare. Consistent with the alleged agreement to "care for" Crowe, De Gioia should continue to pay the costs of all necessary medical, dental and pharmaceutical bills. Because an automobile is not essential for Crowe, we agree with the trial court that De Gioia need not provide her with a car. We agree with the Appellate Division that the defendant should not be restrained from transferring assets during the pendency of this proceeding. 179 *N.J.Super.* at 48. In addition, we disapprove the allowance of costs and counsel fees in an application for temporary relief in an action for support between unmarried cohabitants. In general, counsel fees may not be awarded except as expressly provided by *R.* 4:42–9. Although that rule permits the allowance of counsel fees *pendente lite* in a matrimonial action, *R.* 4:42–9(a)(1), no such provision exists in a non-matrimonial action.

### III

Another issue is whether an action of this nature should be brought in the Law or Chancery Division of the Superior Court. Under our unified court system, all issues, whether legal or equitable, can be resolved in a single proceeding in either division. *Massari v. Einsiedler*, 6 *N.J.* 303, 313 (1951); *Fleischer v. James Drug Stores, Inc.*, 1 *N.J.* 138, 150 (1948). Nonetheless, the orderly administration of justice suggests that we determine the more appropriate division in which to bring an action for breach of contract between unmarried cohabitants.

Plaintiff's choice here, as in *Kozlowski*, was the Chancery Division. In this case, however, the Appellate Division remand-

ed the matter for trial in the Law Division. The Appellate Division reasoned that the essential nature of the action was a breach of contract for which the appropriate remedy was money damages, an action at law. 179 *N.J.Super.* at 41–42. The dissenting judge concluded, however, the matter belonged in the Chancery Division because the complaint, in effect, sought specific performance of a unique kind of agreement. *Id.* at 47.

As an abstract proposition, a breach of contract action between unmarried cohabitants might be brought in either the Law or Chancery Division. In many such actions, the only remedy sought may be money damages, an interest in a pension or the like, and the Law Division will be the appropriate forum. In many other cases, where the principal relief is equitable in nature, the action should be brought in the Chancery Division. *R.* 4:3–1(a)(1).

In her application for preliminary relief, Crowe seeks an order maintaining the *status quo* during the pendency of the action. Moreover, the ultimate relief sought includes an order enforcing the alleged agreement between the parties and compelling De Gioia to transfer to Crowe "a reasonable share of all property, both real and personal."

Whether one views the complaint as requesting specific performance or an injunction, it summons the infinite variety and flexibility of equitable remedies. 1 Pomeroy, *Equity Jurisprudence*, § 109 at 131. Equity preserves that flexibility to devise new remedies "to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed." 1 Pomeroy, *supra*, § 111 at 144. Other kinds of cases involving contracts for personal support have been brought in the past in equity. *E.g., Soper v. Cisco*, 85 *N.J.Eq.* 165 (E. & A. 1915) (action in Chancery Division to set aside conveyance from mother to daughter in exchange for agreement to support for life; held, conveyance made for valid consideration and agreement to support is enforceable);

*Giacobbi v. Anselmi*, 18 *N.J.Super.* 600 (Ch.Div.1952) (enforcing oral promise to support grantor in return for conveyance of real property to him and his wife, grantor's daughter). Moreover, a similarity exists between many of the issues and proofs in this type of case and those in a matrimonial action, the exclusive province of the Chancery Division under *R.* 4:75. Consequently, in this case, as we anticipate will be true in the majority of such cases, the Chancery Division is the appropriate forum. Selection of the Law or Chancery Division in future cases should reflect the responsible exercise of judgment by counsel, subject to the control of the court, to best achieve a just result in this evolving cause of action.

We reverse the judgment of the Appellate Division; continue, as modified, the order of the Chancery Division for interim relief; and remand the matter to the Chancery Division for a plenary hearing on an accelerated schedule.

SCHREIBER, J., dissenting.

In *Kozlowski v. Kozlowski*, 80 *N.J.* 378 (1979), we recognized the possible existence of an agreement between consenting adults who desire to live together. However, Judge Halpern, writing for the Court, carefully noted that "our decision today has not judicially revived a form of common law marriage which has been proscribed in New Jersey since 1939 by *N.J.S.A.* 37:1–10." *Id.* at 387. He also observed: "Alimony may be awarded only in actions for divorce or nullity, and equitable distribution is awarded only in actions for divorce. *N.J.S.A.* 2A:34–23 *et seq.*" *Id.* at 383. Today's decision, only three years later, has drained those words of meaning. The majority requires that defendant provide *pendente lite* monetary support, pay all necessary medical, dental and pharmaceutical bills, and furnish a home. It also acknowledges that plaintiff may maintain a suit for specific performance for continued support for the rest of her life and for a reasonable share of all property, both real and personal, acquired by defendant while the parties

lived together. In so doing, the majority has significantly closed the gap between the married and unmarried.

The legislative proscription against common law marriage remains on the books, but is rendered meaningless and ineffectual by this Court. The majority today has created a *de facto* marriage and distorted traditional equitable standards for interim relief in order to grant a remedy the Legislature has provided only for married persons. I do not deny the right of consenting adults to live together, but until the Legislature decides otherwise I would not grant *pendente lite* relief under the circumstances here.

In a situation not involving marriage, the Court would do well to follow settled equitable principles in determining whether interim relief should be granted for an alleged breach of contract. In *Citizens Coach Company v. Camden Horse Railroad Company*, 29 *N.J.Eq.* 299 (1878), the Court of Errors and Appeals codified the rules governing the granting of preliminary injunctive relief. These guidelines have proved workable and useful. They may be summarized as follows: (1) Is there an urgent necessity for the relief? The injury threatened should be a material one that cannot be adequately redressed by pecuniary damages. If the plaintiff has an adequate remedy at law, namely, an action for damages, interlocutory relief should be denied. (2) Is the right on which the plaintiff founds his claim settled? In other words, does it involve a novel legal problem? *Compare Public Bancorporation v. Atlantic City Wimsett Thrift Co.*, 112 *N.J.Eq.* 367 (E. & A. 1933), *with General Investment Co. v. American Hide & Leather Co.*, 98 *N.J.Eq.* 326 (E. & A. 1925). (3) Are the facts constituting the basis of the claim controverted? It is the general rule that a preliminary injunction will not issue where the material facts are met by a full, explicit and circumstantial denial under oath. *Ferraiuolo v. Manno*, 1 *N.J.* 105, 108 (1948).

A court may also intervene to protect the *res* from "destruction, loss or impairment, so as to prevent the decree of the court,

upon the merits, from becoming futile or inefficacious in operation, and particularly so where it appears that the damage resulting to the complainant by a continuance of the status may prove to be irreparable." *Guangione v. Guangione,* 97 *N.J.Eq.* 303, 305 (E. & A. 1925). *See Naylor v. Harkins,* 11 *N.J.* 435, 446 (1953); *Christiansen v. Local 680 of the Milk Drivers,* 127 *N.J.Eq.* 215, 219–20 (E. & A. 1940). So, too, a court should consider whether maintenance of the status quo will result in no material or only comparatively slight damage to defendant's rights, pending the final hearing, *Peters v. Public Service Corp. of N.J.,* 132 *N.J.Eq.* 500, 512 (Ch. 1942), *aff'd,* 133 *N.J.Eq.* 283 (E. & A. 1943). This involves a balancing of the conveniences. Where the plaintiff's right is very doubtful, the balance of convenience in his favor must be extremely strong. This weighing process ultimately reaches the point where only destruction of the subject matter of the suit will move the court.

Lastly, courts should act cautiously in granting temporary injunctive relief, particularly when the matter is presented only on affidavits. *Citizens Coach* admonishes us:

> There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction. · [29 *N.J.Eq.* at 303]

When tested by these guidelines, *pendente lite* relief should have been denied in this case. The facts are sharply controverted and plaintiff's claim for relief is not clear. The relief sought arises out of the "agreement" between the parties and plaintiff's basic demand in her complaint calls for its enforcement. The defendant categorically denies the existence of that agreement.

All the proofs were in the form of pleadings and affidavits, which disclose the following facts:

Rose Crowe had been living in an apartment in Perth Amboy with her seven children, ages 5 to 17, when in 1960 she met the defendant, Sergio De Gioia. At that time she was separated from her husband. She alleges in her complaint that within a few weeks the defendant moved into her apartment and began to live with her and her family. In 1967, they moved to a

one-family residence at 40 Lewis Street, Perth Amboy. She also asserts that they lived together for 20 years during which time "the plaintiff used the defendant's surname and was known as Rose K. DeGioia." Mrs. Crowe obtained a divorce three years after their relationship began. According to the plaintiff, De Gioia supported her and her seven children thereafter. All Mrs. Crowe's children have become adults and left the household except a 27 year-old son who suffers from an emotional disability and receives Social Security payments. He advanced his mother $1,500 to pay her attorneys' retainer in this action.

Plaintiff alleged in her complaint that "from time to time" during the 20-year period of cohabitation, the defendant "expressly declared to the plaintiff that he would take care of her and support her for the rest of her life, and that he would share with her his various assets." It is this general declaration, uncertain as to when it was made or under what circumstances, that is the heart of the complaint. No other agreement or promise is asserted. The defendant's answer denied the alleged living arrangements and specifically denied that he had ever made the declaration of life support or sharing his assets with her. Defendant's supplemental affidavit stated that "[a]t no time did I tell Rose Crowe that I would support her for the rest of her life or share any of my assets...." The defendant also claimed to be "so outraged at the assertion contained in the plaintiff's affidavits that I feel that this matter can only be resolved surely with a plenary hearing and I request that the Court set up a convenient date when testimony can be taken."

The trial court on the motion for *pendente lite* relief also had before it other material. The defendant produced an affidavit of Frank Simonelli who had known defendant for approximately 40 years and had been defendant's business partner. He averred that, contrary to plaintiff's assertion, neither plaintiff nor defendant had represented themselves as husband and wife and that the defendant had always maintained his own residence separate and apart from plaintiff and her children. An affidavit of Simonelli's former wife, Adelaide Spitsbergen, confirmed

these facts. Peter and Vera Yuresko's joint affidavit stated that they had known defendant since 1974, when the defendant purchased the Holmdel Motor Inn from them. They had met defendant and plaintiff on a number of occasions, and plaintiff was never introduced as or represented to be the defendant's wife.

The defendant also showed that plaintiff had not been using his surname throughout the 20-year period, as she had certified, because her telephone, Blue Cross and Blue Shield, State Unemployment Insurance, various bills, election records, and magazine subscriptions were listed under and addressed to plaintiff as Rose Crowe. These items brought into question the plaintiff's credibility.

A fair appraisal of all this information raises a serious doubt as to whether the parties had ever entered into an agreement that defendant would support plaintiff for life and share all his property acquired during the 20-year period that he allegedly lived with her. Interestingly, the trial court never found that that agreement existed. The most that it was willing to say was "there *seems* to be sufficient evidence for me to at least believe that *there was some type of arrangement* between the parties." (Emphasis added). That is a far cry from finding that a contract had been made under which the defendant bound himself to furnish lifetime support to the plaintiff and to share upon separation all property acquired while they lived together. It is most unlikely that the parties would have made such an agreement and not married.

Moreover, the plaintiff has an adequate remedy of money damages for breach of lifetime support. We recently so held in *Kozlowski v. Kozlowski, supra.* In *Kozlowski*, after a plenary hearing the trial court found that the parties made a contract under which the woman was to provide housekeeping, shopping and social services and, in return, the man was to furnish the funds for those purposes, and was to support her for the rest of

her life. We held the contract was enforceable. The legal theory was simply the existence of a contract, for the breach of which monetary damages would be available. Accordingly, she was awarded a lump sum. *Kozlowski* made it clear that "[p]laintiff is not entitled to alimony or equitable distribution." 80 *N.J.* at 383.

The force motivating the trial court here to grant interim support was the fact that the plaintiff was poor. The court stated that if she had had $10,000, it would not have granted any *pendente lite* relief. Underlying the majority's rationale is the similar thought that defendant is "a person of substantial means" and if he failed to support her, the result "would be devastating." In the absence of a necessary foundation—a clear right to relief—whether we grant or deny relief should not depend on the wealth of the parties. A judge should not yield to the subtle temptation to render an unjust judgment out of pity for the poor.

Furthermore, plaintiff had the burden of showing that she would not be able to maintain herself. In that respect, she made no allegations of her inability to work or to receive support from six of her children.[1] *See N.J.S.A.* 44:1–140(a) (requiring children to support a parent who applies for and is eligible to receive public assistance).

Under traditional principles, plaintiff is not entitled to interim relief. Unless this action be classified in the same category as a matrimonial matter, a *pendente lite* remedy should not be made available. Yet the majority, without articulating any reason, has done exactly that. By clothing the action in equitable terms—specifically enforcing the agreement—it has transformed the action from one for damages for breach of contract

---

[1]The majority asserts plaintiff certified that she was unskilled and unemployable. The record does not indicate that. She did assert that she actively participated and worked with the defendant in his business.

and deprived the defendant of the right to a jury trial.[2] *Steiner v. Stein*, 2 *N.J.* 367 (1949); *Associated Metals & Minerals Corp. v. Dixon Chemical & Research, Inc.*, 82 *N.J.Super.* 281 (App.Div. 1964). The *Kozlowski* rationale is now moribund. Support and equitable distribution are no longer awarded "only in actions for divorce." *Kozlowski v. Kozlowski, supra,* 80 *N.J.* at 383. I conceive of nothing that has occurred since our decision in that case to justify departing from its holding and underpinning. Therefore, I would affirm the judgment of the Appellate Division.

For reversal and remandment—Justices PASHMAN, CLIFFORD, HANDLER, POLLOCK and O'HERN—5.

*For affirmance*—Justice SCHREIBER—1.

---

[2]The two cases relied upon by the majority to support its proposition that this suit is properly in chancery because equity has granted affirmative relief in contracts for personal support are not appropos. In *Soper v. Cisco*, 85 *N.J.Eq.* 165 (E. & A. 1915), and *Giacobbi v. Anselmi*, 18 *N.J.Super.* 600 (Ch.1952), the actions were to set aside conveyances of realty.