687 A.2d 736

THE PRINCETON INSURANCE COMPANY, PLAINTIFF–RESPONDENT, v. 349 ASSOCIATES, L.L.C. PAUL V. PROFETA AND ASSOCIATES, INC., PAUL V. PROFETA, LORI PROFETA, JOHN DOE 1 THROUGH 5 AND JOHN DOE 6 THROUGH 10 SAID NAMES REPRESENTING FICTITIOUS INDIVIDUALS, AND ABC CORPORATION AND XYZ CORPORATION, SAID NAMES REPRESENTING FICTITIOUS CORPORATIONS, DEFENDANTS–APPELLANTS.

Argued December 3, 1996—Decided February 3, 1997.

*Mark H. Sobel* argued the cause for appellants (*Greenbaum, Rowe, Smith, Ravin, Davis & Himmel,* attorneys).

*Thomas P. Scrivo* argued the cause for respondent (*McElroy, Deutsch & Mulvaney,* attorneys).

PER CURIAM.

We granted leave to appeal to consider the validity of a preliminary injunction. The injunction restrains 349 Associates, L.L.C. and Profeta Associates, Inc. (defendant or Profeta) from communicating with its tenants about the business practices of Princeton Insurance Company (plaintiff or Princeton) and from requiring its tenants to obtain insurance from companies other than Princeton.

Profeta operates a number of professional office buildings in New Jersey. Four hundred of Profeta's tenants are physicians. As part of its standard lease agreement, Profeta requires that each tenant name the landlord as an additional insured on the tenant's property and general liability insurance policies. Twenty-two of Profeta's tenants are insured by Princeton.

In a letter dated March 11, 1996, Profeta reminded its professional tenants that it is a requirement of each lease to "secure property and casualty and liability insurance naming the Landlord as an additional Insured." The letter recites that many of the tenants have obtained insurance from Princeton and that "[w]e have experienced a great deal of difficulty with the manner in which Princeton Insurance has processed its claims," and are "requesting that all Tenants make a best efforts attempt to try to insure with another carrier." Observing, "[y]ou are free to insure with any reputable carrier you choose, except the Princeton Insurance Company," the letter suggests that another insurance company "can offer lower rates and better service" through an insurance broker known to Profeta.

Princeton filed a complaint in the Law Division alleging tortious interference with its contract rights and its prospective economic advantage, libel and slander of its reputation, breach of the duty of good faith and fair dealing, and group boycott. On plaintiff's motion, the trial court entered a preliminary injunction prohibiting defendants "from refusing to execute any lease with any tenant on the basis that the Princeton Insurance Company provides property and general liability insurance to that tenant ... [and] from

further disseminating their March 11, 1996 letter and/or the statements contained therein to any party for any reason."

■ The Appellate Division, in an unreported opinion, denied Profeta's motion for leave to appeal and for summary reversal of the preliminary restraints. One judge of the Appellate Division dissented. We stayed the injunction pending disposition of this appeal. We now dissolve the preliminary injunction primarily for the reasons stated in the opinion of the dissenting member of the Appellate Division. The dissent reasoned:

> The core issue is whether a landlord may specify the insurance companies acceptable to him, when the tenants are required by their leases to provide insurance that names the landlord as an additional insured. I do not believe that preliminary restraints should have issued because (1) plaintiff has not established a likelihood of success on that issue; (2) if plaintiff ultimately prevails, money damages would be adequate.

Those equitable principles of law relating to preliminary relief are firmly established by *Crowe v. De Gioia*, 90 *N.J.* 126, 132–34, 447 *A.*2d 173 (1982).

■ Because of the disposition that we make, we need not address the second basis for the dissent, that restraining the dissemination of the letter effects an unlawful restraint on speech. Considerable debate surrounds the subject of the constitutional protection to be afforded to commercial speech. *See* O. Lee Reed, *Is Commercial Speech Really Less Valuable Than Political Speech? On Replacing Values and Categories in First Amendment Jurisprudence*, 34 *Am. Bus. L.J.* 1 (1996). It is true that " '[c]ommercial speech' receives much narrower First Amendment protection than other speech," and that the First Amendment "does not protect deceptive or misleading commercial speech." *Semco, Inc. v. Amcast, Inc.*, 52 *F.*3d 108, 111 (6th Cir.1995). But it is error to assume that commercial speech is not entitled to First Amendment protection or that it is without value in the marketplace of ideas. *Bigelow v. Virginia*, 421 *U.S.* 809, 826, 95 *S.Ct.* 2222, 2234, 44 *L.Ed.*2d 600, 614 (1975).

> The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish. Some of the ideas and

information are vital, some of slight worth. But the general rule is that the speaker and the audience, not the government, assess the value of the information presented.

[*Edenfield v. Fane*, 507 *U.S.* 761, 767, 113 *S.Ct.* 1792, 1798, 123 *L. Ed.*2d 543, 552 (1993).]

It suffices to observe that courts should not lightly restrain the dissemination among business associates of information about products and services. We expect that the parties to the leases (the doctors and Profeta) can work out any problems concerning coverage under the leases. We were informed at oral argument that Profeta had not sought to terminate any tenancies. The preliminary injunction issued by the Law Division on May 24, 1996 is dissolved. The matter is remanded to the Law Division for further proceedings.

*For remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.