727 A.2d 1023

SYED ISPAHANI, PLAINTIFF–RESPONDENT, v. ALLIED DO-
MECQ RETAILING USA AND DUNKIN' DONUTS, INC., DE-
FENDANTS/THIRD–PARTY PLAINTIFFS/APPELLANTS, v.
FIVE FLOWERS CORP. AND SYED ISPAHANI, T/A DUNKIN'
DONUTS, THIRD–PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 12, 1999—Decided April 22, 1999.

Before Judges BROCHIN and STEINBERG.

*Craig R. Tractenberg*, argued the cause for appellants (*Buchanan Ingersoll*, attorneys; *Mr. Tractenberg* and *John J. Jacko, III*, on the brief).

*James S. Dobis*, argued the cause for respondent (*Dobis & Reilly*, attorneys; *Mr. Dobis*, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Defendant Dunkin' Donuts Incorporated, as franchisor, and plaintiff third-party defendant Syed Ispahani and his corporation, third party defendant Five Flowers Corp., as franchisees, are parties to a Dunkin' Donuts franchise agreement. Ispahani and Dunkin' Donuts are also parties to an "Exclusive Development Agreement" which authorized Ispahani to open four Dunkin' Donuts stores (in addition to those he was already operating) at locations to be approved by Dunkin' Donuts.

On December 18, 1997, Ispahani filed this lawsuit against defendant Allied Domecq Retailing, U.S.A., which he alleges was Dunkin' Donuts' successor. Ispahani's complaint asserts, in substance,

that he purchased property to be used as a site for a new Dunkin' Donuts store, paid or obligated himself for the purchase price, and incurred substantial additional expenses in reliance on verbal approval from an authorized representative of Dunkin' Donuts. The complaint continues that final approval was unjustifiably refused and Ispahani suffered a substantial financial injury as a consequence. Ispahani also filed an amended complaint which states substantially the same claim against Dunkin' Donuts, but also alleges defendants violated the Franchise Practices Act, *N.J.S.A.* 56:10–1 to –15.

Dunkin' Donuts filed a counterclaim against Ispahani and a third-party complaint against Five Flowers alleging that they breached their obligations under their franchise agreement by failing to pay continuing franchise fees and contributions toward advertising expenses. Dunkin' Donuts' pleading also alleges that it sent the franchisees notices of default and notices to cure as required by the franchise agreement, that they failed to cure, and that it therefore sent them notices terminating their franchises.

These claims and counterclaims are still awaiting trial.[1] Ispahani and Five Flowers are still operating as Dunkin' Donuts franchisees. Dunkin' Donuts moved to enjoin them "from operating donut shops at their former franchised locations" during the pendency of this litigation. As grounds for the injunction, Dunkin' Donuts argued to the motion court that Ispahani and Five Flowers had "failed to pay substantial franchise and advertising fees for the use of the Dunkin' Donuts trade name and proprietary marks," thereby causing the termination of their franchises, and that the former franchisees' continuing operations infringe Dunkin' Donuts' trademarks, violate covenants against competition, and have caused it "irreparable harm."

In support of its motion for an interlocutory injunction, Dunkin' Donuts relied on a certification of Gregory Justice, its "Collection

---

[1] Leave to appeal was granted pursuant to *R.* 2:2–4.

Coordinator." His certification is dated May 15, 1998. In it he alleges:

[A] Notice to Cure monetary defaults was issued to Plaintiff/Third–Party Defendant Syed Ispahani and Third–Party Defendant Five Flowers Corporation, ... they failed to cure such defaults within the time permitted and ... a Notice of Termination of their Franchise Agreement was issued, terminating their Franchise Agreement effective sixty (60) days from the issuance of the Notice to Cure. A Notice of Termination was also issued confirming the termination.

Justice's certification also alleges that Ispahani and Five Flowers continue to hold themselves out as Dunkin' Donuts franchisees and that, as of May 14, 1998, they owed unpaid franchise and advertising fees for two stores in an amount which Dunkin Donuts estimated to be $45,796.01, plus attorneys' fees and collection costs of $8,529.30. Dunkin' Donuts also relied on the terms of its franchise agreement which included a clause stating that accepting late payments does not waive the franchisor's right to insist on timely payments.

Mr. Ispahani submitted an opposing certification dated May 27, 1998, which implicitly admitted that he owed fees, but denied the amount and asserted that Dunkin' Donuts had agreed to accept payments late because, in substance, it recognized that its conduct had caused him to suffer financial losses and cash flow problems. He also alleged that he had been working ten to fourteen hours a day for the past nine years operating the franchise and that granting the injunction would cause him "irreparable harm" by destroying his livelihood. Mr. Ispahani testified briefly at the July 10, 1998 hearing on Dunkin' Donuts' application for an interlocutory injunction that two days earlier he had reported sales through June and had paid the royalties due for those sales, and that the day before the hearing he had sent Dunkin' Donuts a check covering fees for the week ending July 4.

The motion court denied Dunkin' Donuts' application to enjoin Ispahani and Five Flowers from continuing to operate as Dunkin' Donuts franchisees during the pendency of this litigation. In a brief oral opinion, the court referred to the prerequisites for the

issuance of a preliminary injunction, *see Crowe v. De Gioia*, 90 *N.J.* 126, 132–34, 447 *A.*2d 173 (1982), and declared:

> This court is unable to find if Dunkin' Donuts will suffer immediate and irreparable harm if the injunction does not issue. Further, Dunkin' Donuts has not demonstrated that it will suffer the greater harm if the preliminary injunction is denied than the plaintiff will suffer if it is granted. It appears to the court that enjoining the operation of the franchise preliminarily will impose a greater harm on the plaintiff than [denying] it will on Dunkin' Donuts. . . .

We agree with the motion court that Dunkin' Donuts did not make the showing necessary to justify the relief which it sought. To obtain a preliminary injunction, the applicant must establish that he will suffer irreparable injury if the relief is denied, that his claim is based on a settled legal right, that the material facts are substantially undisputed, and that the harm to him if the injunction is denied will be greater than the harm to the opposing party if the injunction is granted. *Crowe v. DeGioia, supra*, 90 *N.J.* at 132–34, 447 *A.*2d 173. Since Dunkin' Donuts has relied on federal cases dealing with the grant or denial of preliminary injunctions in Lanham Act cases, 15 *U.S.C.A.* §§ 1051 to 1127, we note that the prerequisites for a preliminary injunction are described in similar terms in those decisions. *See e.g., McDonald's Corp. v. Robertson*, 147 *F.*3d 1301, 1306 (11th Cir.1998) (permitting district court to grant preliminary injunction where movant shows: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest"); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 *F.*3d 800, 803 (3d Cir.1998) (same). In the present case, Dunkin' Donuts failed to carry its burden of establishing that it will probably prevail on the merits of its claim.

In the context of Dunkin' Donuts' application to enjoin Ispahani and Five Flowers from continuing to operate as its franchisees, proving that Dunkin' Donuts will probably "prevail on the merits" means establishing that it probably had the legal right to terminate their franchise contracts. The facts bearing on that issue

were sparse and contested. Dunkin' Donuts proved by its officer's certification and its franchisees' admission that Ispahani and Five Flowers had not paid royalties and advertising fees on time. The amount due and unpaid was disputed. Both sides relied on conclusory statements, without providing or referring to underlying records to substantiate their claims. None of the parties offered proof of the total amount of royalties and advertising fees paid per month or per year so that the court could evaluate the significance of the arrearage. Ispahani claimed that Dunkin' Donuts' allegedly unconscionable breaches of their development agreement were responsible for the tardiness of the payments and that Dunkin' Donuts had specifically consented to the payments being made late. No testimony was presented on Dunkin Donuts' alleged consent, and the court made no findings on that issue.

Dunkin' Donuts' argument on the issue of its likelihood of prevailing is not entirely clear, but it seems to be contending that it is not obligated to prove the franchisees' material breach of contract and its own clean hands in order to justify its termination of their franchises. In support of this proposition, it relies on *S & R Corporation v. Jiffy Lube International*, 968 *F*.2d 371 (3d Cir.1992), which it interprets to mean that, as a matter of federal law, a franchise resting on a federally registered trademark can be revoked for any reason, or at least for any infraction of the franchise agreement, without regard either to its own responsibility for the breach or to the materiality of the breach.

Its reliance is misplaced. A recent commentary summarizes the relevant law as follows:

> In a small minority of jurisdictions, wrongful termination claims are not valid defenses to a Lanham Act claim and are viewed merely as independent claims for damages. [Citing, among other cases, *S & R Corp., supra*, 968 *F*.2d at 375.] These decisions thus appear to be based on the notion that a franchisor can unilaterally withdraw Lanham Act "consent" to use a mark, subject only to the risk that if that action is later held to have been unlawful the franchisor could be liable for a damage award to the franchisee. [Footnote omitted.] *More commonly, however, courts examine whether the termination or nonrenewal was lawful to determine whether there has been a violation of the Lanham Act.* [Emphasis added; footnote omitted.] These cases thus appear to assume that Lanham Act

"consent" is subject to state law—both statutory law and common law—regulating franchise termination and nonrenewal. [Footnote omitted.]

[Thomas L. Casagrande, *Using the Lanham Act to Ward off Preliminary Injunctions*, 18 *Franchise L.J.* 87, 90 (1999).]

For the proposition that franchisees cannot be preliminarily enjoined from operating under their franchises and from utilizing Lanham Act trademarks without proof that the franchise was rightfully terminated for cause, see *McDonald's Corporation, supra*, 147 *F*.3d at 1308 (requiring franchisor to make some type of showing that it properly terminated the franchise agreement to prevail on the merits of a trademark infringement claim); and *Digital Equipment Corporation v. Altavista Technology, Inc.*, 960 *F.Supp.* 456, 472–73 (D.Mass.1997) (same). New Jersey law is to the same effect.

Dunkin' Donuts' franchise agreement with Ispahani and Five Flowers is subject to the New Jersey Franchise Practices Act, *N.J.S.A.* 56:10–1 to –15. *See Mariniello v. Shell Oil Co.*, 511 *F*.2d 853, 860 (3rd Cir.1975). The provision of the Act which prohibits termination of a franchise except for good cause, *N.J.S.A.* 56:10–5, is not preempted by the Lanham Act or any other federal law. *See Mariniello, supra*, 511 *F*.2d at 857. One of the issues which will have to be determined at the final hearing is whether, on the basis of all of the facts of this case, Dunkin' Donuts has "good cause" for terminating the franchises of Ispahani and Five Flowers. *Cf. E.S. Bills, Inc. v. Tzucanow*, 38 *Cal*.3d 824, 215 *Cal.Rptr.* 278, 700 *P*.2d 1280, 1286–87 (1985) (determining that in franchise contract that gave plaintiff right and duty to set prices, defendants' declaration that they would pay less than prices set would not be breach and would not be good cause to terminate the franchise if plaintiff violated the contract by charging improper prices).

The order appealed from is affirmed.