**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5687-18

BOARD OF EDUCATION OF
THE TOWNSHIP OF
LAKEWOOD, OCEAN
COUNTY,

     Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF EDUCATION,

     Respondent-Respondent.

_____

Submitted March 22, 2021 – Decided May 21, 2021

Before Judges Messano and Suter.

On appeal from the New Jersey Commissioner of Education, Docket No. 142-6/19.

Michael I. Inzelbuch, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Aimee Blenner, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Board of Education of the Township of Lakewood, Ocean County (the BOE) appeals the August 6, 2019 Final Decision of the Commissioner of the New Jersey Department of Education (Commissioner). This Final Decision denied the BOE's request for emergent relief and dismissed the BOE's other claims as moot. We affirm the Final Decision.

I.

On March 5, 2019, the Governor's budget for fiscal year (FY) 2020 recommended thirty million dollars in school funding for the BOE that included additional transportation aid, additional special education categorical aid and provisional stabilization aid. Office of Mgmt. & Budget, The Governor's FY2020 Budget (March 2019). The Annual Appropriations Act for FY2020 was passed by the Legislature on June 20, 2019, without the categories of school aid proposed by the Governor. L. 2019, c. 150. It was signed by the Governor, effective July 1, 2019.

In March 2019, two days after the Governor's budget message, the Commissioner issued State Aid Notices to each school district informing them of the amount of aid payable to the district for the next year. N.J.S.A. 18A:7F-5(a). The State Aid Notice to the BOE included the categories of aid set forth

in the Governor's budget message. Pursuant to N.J.S.A.18A:7A-5(c), the BOE was required to adopt and submit a budget to the Commissioner for approval by March 20, 2019. N.J.S.A. 18A:7F-5(c). The BOE did not meet this deadline.

On June 19, 2019, the BOE filed an "Emergent Relief Request and Petition" with the Commissioner. The BOE claimed the Department of Education (Department) had given "assurances and promises" that it would be provided "[thirty million] dollars and additional funds and relief . . . ." (Emphasis removed). However, neither the Senate nor Assembly budget committees included this amount in the appropriations legislation. The BOE requested the Department to provide "all requested records/documents" about the budget and budget proceedings. It sought an order for the Department to "take any and all steps to provide necessary and definitive and secure funding" to the BOE. It requested the Department "take whatever action is required to allow the [BOE] to complete its [b]udget" and to advise the BOE about the sources of funding to provide for a thorough and efficient education for public school children. The Department was asked to forgo collecting any loans or state aid advances and reimburse the BOE for any costs and fees related to its filing.

A-5687-18

The Commissioner transmitted the BOE's request to the Office of Administrative Law (OAL) as "emergent." The Administrative Law Judge (ALJ) treated the BOE's filing both as "a petition seeking final relief" and as a "motion for emergent relief," even though the BOE had not filed a formal motion or petition as required by N.J.A.C. 6A:3-1.6(a).

The BOE approved a budget on June 24, 2019. That budget included the categories of aid that were not included in the Appropriations Act.

The Department filed a motion on June 25, 2019, to dismiss the BOE's emergent relief request, claiming there was no risk of immediate harm and that the BOE's claims failed to state a claim upon which relief could be granted. The ALJ conducted oral argument, providing the parties the ability to respond to supplemental exhibits and arguments and closing the record on July 3, 2019. The BOE advised the ALJ that its budget was "null and void" without the additional thirty million, and that it would be shutting down the district on July 1, 2019.

On July 1, 2019, the Commissioner wrote to the State Treasurer requesting an advance of $36,033,862 in state aid from the School District Deficit Relief Account (the Deficit Relief Account) because this was "necessary to ensure the provision of a thorough and efficient education" for the BOE. The Treasurer

approved the request the same day, noting the BOE was "eligible for funding pursuant to . . . N.J.S.A. 18A:7A-55 . . . to be repaid with a term of repayment not to exceed [ten] years."

The July 3, 2019 Initial Decision denied the BOE's request for emergent relief. The ALJ found the BOE did not show it would suffer irreparable harm. The BOE acknowledged it had funds to meet its obligations through March 2020. The ALJ concluded the BOE's failure to provide a budget by the required deadline did not create an emergency "when it represent[ed] it [had] the funds to operate." The ALJ found the BOE did not assert a well settled legal right because it failed to support its position with legal authority. The ALJ found the BOE was not likely to be successful on the merits of its claims. By the date the Initial Decision was completed, the Commissioner already sent a letter to the Treasurer asking for an advance payment for the BOE.

In balancing harms, the ALJ expressed concern the relief requested by the BOE could encourage other districts not to comply with applicable budget regulations when facing a budget shortfall, and then try to compel the Commissioner to provide funding. The ALJ concluded this "could cause chaos in the school funding and budget procedures." The ALJ also granted the

5

Department's motion to dismiss the BOE's claims, finding they were moot because the BOE had approved a budget and the Treasurer had advanced funds.

The BOE filed exceptions. The August 6, 2019 Final Decision by the Commissioner adopted the Initial Decision as final and dismissed the BOE's claims. To the extent the BOE was seeking money to cover a shortfall in the FY2020 operating budget, the Commissioner determined the request was "moot." The Treasurer already had advanced funds to the BOE. The Commissioner noted he did not have the ability to provide the BOE with the direct aid it requested because this was not included in the State budget by the Legislature.

The Commissioner agreed with the ALJ that the BOE did not show the need for emergent relief. The BOE admitted it had the funds through March 2020. The Commissioner did not find the BOE met any of the other standards for emergent relief, citing to Crowe v. DeGoia, 90 N.J. 126 (1982). The Commissioner noted if the BOE were "seeking a political remedy — i.e., recourse for the disparity between the Governor's recommended budget and the budget passed by the Legislature — this forum [did] not have any authority to rule on that request."

The BOE appealed the Final Decision raising the following arguments:

A.  THE COMMISSIONER'S FINDING THAT THE BOARD DID NOT ESTABLISH A NEED FOR EMERGENT RELIEF WAS REVERSIBLE ERROR.

1.  The Board Will Continue to Suffer Irreparable Harm if Relief is Not Granted.

2.  The Underlying Legal Right is Well-Settled.

3.  The Board is Likely to Succeed on the Merits.

4.  The Comparative Harm of the Board will be Greater than that of the Department of Education if Relief is Not Granted.

B.  THE COMMISSIONER'S FINDING THAT THE BOARD'S CASE IS MOOT WAS REVERSIBLE ERROR.

C.  THE COMMISSIONER'S FRAMING OF THE ISSUE AS A POLITICAL ONE WAS REVERSIBLE ERROR.

II.

The scope of our review in an appeal from a final decision of an administrative agency is limited.  Russo v. Bd. of Trs., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)).  The agency's decision should be upheld unless there is a "clear showing that it is arbitrary, capricious, or

7

unreasonable, or that it lacks fair support in the record." Ibid. (quoting

Herrmann, 192 N.J. at 27-28). This analysis focusses on three issues:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).]

We are not bound by the "agency's interpretation of a statute or its determination

of a strictly legal issue." Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec.,

64 N.J. 85, 93 (1973)).

## A.

To receive emergent relief, the BOE was required to show by clear and

convincing evidence: (1) a substantial and imminent irreparable injury will be

suffered in the absence of emergent relief; (2) the legal right underlying the

claim is well-settled; (3) the party seeking relief has a likelihood of prevailing

on the merits of the underlying claim; and (4) a balancing of the equities and

hardships favors emergent relief. N.J.A.C. 6A:3-1.6(b)(1) to (4); see Crowe, 90

N.J. at 132-34.

A-5687-18

There was no imminent irreparable harm shown on this record. The BOE acknowledged it had funds to operate until March 2020. By July 1, 2019, the BOE was approved to receive an advance of $36,033,862. This included the thirty million that was requested and nearly six million more which could be used for prior advances. The BOE's complaint was that this money was provided as a loan rather than as direct aid. However, the Legislature did not include this direct aid in the Appropriations Act. With the advance, the BOE could continue operations based on what it had requested.

The BOE did not have a well-settled legal right to direct aid. The parties did not dispute that New Jersey's Constitution provided for a "thorough and efficient" education, N.J. Const. art. VIII, § 4, ¶ 1, and that the School Finance Reform Act of 2008 (SFRA), N.J.S.A. 18A:7F-43 to-63, included the formula to achieve this, and had been found to be constitutional. See Abbott ex rel. Abbott v. Burke (Abbott XX), 199 N.J. 140, 154 (2009).

The Commissioner did not have the power to appropriate direct funds for any school district. The New Jersey Constitution provides that "[n]o money shall be drawn from the State treasury but for appropriations made by law." N.J. Const. art. VIII, § 2, ¶ 2. There is one appropriation law annually. "All moneys for the support of the State government and for all other State purposes as far as

can be ascertained or reasonably foreseen, shall be provided for in one general appropriation law covering one and the same fiscal year . . . ." Ibid. This has been described as the "center beam of the State's fiscal structure." City of Camden v. Byrne, 82 N.J. 133, 146 (1980). The purpose of this was "to centralize and simplify state financial operations." Ibid. Only the Legislature has the "power and authority to appropriate funds . . . ." Id. at 148. Appropriating direct funding is the prerogative of the legislative branch of the government, not the executive branch. See N.J. Const. art. VIII, § 2, ¶ 2.

The BOE did not show it would succeed on the merits. The BOE simply could not demand direct aid of the Commissioner when this was not appropriated in the budget. City of Camden, 82 N.J. at 148.

The equities did not balance in the BOE's favor. The BOE complains it will have to pay back the monies it was advanced. However, no one can know the contents of future budgets or what appropriations may become available to the BOE in future years. Moreover, the Commissioner's concern about chaos in the budgeting process cannot be discounted should another district decline to approve a budget and then declare an emergency because of its absence. There was nothing arbitrary, capricious or unreasonable about the Commissioner's decision to deny the BOE's application for emergent relief.

A-5687-18

B.

The BOE argues the Commissioner incorrectly concluded this matter was moot. "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J Super. 214, 221-22 (App. Div. 2011)). Nonetheless, we may rule on cases where the issues "are of substantial importance and are capable of repetition while evading review . . . ." Advance Elec. Co., Inc. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 166 (App. Div. 2002).

During oral argument before the ALJ, counsel for the BOE clarified the BOE was requesting the Department to "[p]ut in writing, '[w]e are still recommending the [thirty] million and we are still recommending the five.'" The ALJ clarified:

> THE COURT: So what you're saying is what you're really looking for is another letter, like the four previous letters that have been sent from the Commissioner to the Treasurer saying "Lakewood needs X dollars because it needs to get a T&E?"

COUNSEL: Exactly.

The BOE requested and received the letter from the Commissioner and an advance that exceeded $36 million. Arguably, that rendered this matter moot because the BOE received what it requested, and our decision could have no practical effect for FY2020. The BOE argues the issue here may be capable of repetition. However, as we have stated, the Constitution reserved for the Legislature the power to appropriate money from the State Treasury. Commc'ns Workers of Am. v. Florio, 130 N.J. 439, 451 (1992); see N.J. Const. art. VIII, § 2, ¶ 2 (providing "[n]o money shall be drawn from the State treasury but for appropriations made by law"). The Legislature did not provide an appropriation for the thirty million sought by the BOE. The Commissioner requested aid from the Deficit Relief Account for provision of a thorough and efficient education. We discern nothing arbitrary, capricious or unreasonable about the Final Decision's dismissal of this petition in light of these facts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12